Jennifer Mara
Baldassare & Mara, LLC
570 Broad Street, Suite 900
Newark, New Jersey 07102
Tel.:  (973) 200-4066
Fax:  (973) 556-1076
jmara@mabalaw.com

Susan C. Cassell
Law Office of Susan C. Cassell
419 Lucille Court
Ridgewood, New Jersey 07450
Tel.: 201-445-3894
Fax: 201-445-3894
cassell.susan@gmail.com

*Counsel for Plaintiff ZURU Ltd.*

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **ZURU LTD.,** | ) | Civil Action No. 15-CV-00548-CCC-MF |
| | ) | |
| Plaintiff, | ) | Hon. Claire C. Cecchi, U.S.D.J. |
| | ) | Hon. Mark Falk, U.S.M.J. |
| v. | ) | |
| | ) | |
| **TELEBRANDS CORP.,** | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

---

## PLAINTIFF ZURU LTD.'S MEMORANDUM OF LAW
## IN OPPOSITION TO TELEBRANDS' MOTION TO DISMISS
## COUNTS I AND IV OF THE COMPLAINT AND MOTION TO STRIKE

---

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

FACTS ............................................................................................................................... 1

ARGUMENT ...................................................................................................................... 2

   I.    PLEADING STANDARD ..................................................................................... 2

   II.    COUNT I (TRADE DRESS INFRINGEMENT) .................................................. 3

      A.    ZURU Alleges that Its Product Is Distinctive .......................................... 4

      B.    The Question of Whether a Trade Dress Is Nonfunctional Is a Factual Question that Must Be Resolved in ZURU's Favor ....................................................................... 4

      C.    ZURU Alleges that Telebrands' Use of ZURU's Trade Dress Causes Consumer Confusion .............................................................................................................. 5

      D.    Telebrands Attempts to Introduce Issues that Are Not Applicable at this Point in the Proceedings ........................................................................................................... 5

         1.   ZURU Has Sufficiently Articulated Its Trade Dress ................................. 6

         2.   ZURU Can Prove that Its Trade Dress Is Non-Functional. ........................ 8

         3.   ZURU Alleges that Its Trade Dress Has Secondary Meaning ................... 9

      E.    ZURU Sufficiently Pled Count I of Its Complaint .................................. 10

   II.    COUNT IV (NEW JERSEY CONSUMER FRAUD ACT) ........................... 10

      A.    ZURU Has Standing under the New Jersey Consumer Fraud Act ........... 10

      B.    ZURU Has Adequately Stated Its NJCFA Claim ..................................... 13

   III.    MOTION TO STRIKE ...................................................................................... 15

   IV.    LEAVE TO AMEND ........................................................................................ 17

CONCLUSION .................................................................................................................. 18

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*800-JR Cigar, Inc. v. GoTo.com, Inc.*, 437 F. Supp. 2d 273 (D.N.J. 2006) ................................ 10

*Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619 (6th Cir. 2002) ..... 8

*Adams v. Gould, Inc.*, 739 F.2d 858 (3d Cir. 1984) .................................................................... 17

*Arcand v. Brother Intern. Corp.*, 673 F.Supp.2d 282 (D.N.J. 2009) ........................................... 14

*Art Attacks Ink, LLC* v. *MGA Entm't Inc.*, 581 F.3d 1138 (9th Cir. 2009)................................... 6

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). ............................................................. 3, 9

*Church & Dwight Co., Inc. v. SPD Swiss Precision Diagnostics GmbH*, Case No. 10-453 (FLW),

    2010 WL 5239238 (D.N.J. Dec. 16, 2010) .................................................................. 11, 12, 16

*Ciba-Geigy Corp. v. Bolar Pharm. Co., Inc.*, 747 F.2d 844 (3d Cir. 1985) .................................. 4

*Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252 (9th Cir. 2001) .................................... 6

*Conte Bros. Auto. v. Quaker State-Slick 50*, 992 F. Supp. 709 (D.N.J. 1998)............................. 10

*Cox v. Sears Roebuck & Co.*, 647 A.2d 454 (1994) .................................................................... 13

*Dicar, Inc. v. Stafford Corrugated Prods., Inc.*, No. 05-5426, 2009 WL 1796053

    (D.N.J. June 22, 2009) .......................................................................................................... 15

*Duraco Prods., Inc. v. Joy Plastic Enters., Ltd.*, 40 F.3d 1431 (3d Cir. 1994) ............................. 4

*Equine Techs., Inc. v. Equitechnology, Inc.*, 68 F.3d 542 (1st Cir.1995) ...................................... 6

*Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303 (3rd Cir. 2014).......................................... 7, 8

*Feiler v. New Jersey Dental Ass'n,* 191 N.J. Super. 426 (Ch. Div. 1983).................................... 11

*First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378 (9th Cir. 1987)........................................ 6

*Frederico v. Home Depot*, 507 F.3d 188 (3rd Cir. 2007) ............................................................ 13

*Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993 (2d Cir. 1997) ........................... 6

*Garlanger v. Verbeke,* 223 F. Supp. 2d 596 (D.N.J. 2002) .......................................................... 15

*Gen. Dev. Corp. v. Binstein*, 743 F. Supp. 1115 (D.N.J. 1990)................................................... 11

*Hart v. Elec. Arts, Inc.*, 740 F. Supp. 2d 658 (D.N.J. 2010).......................................................... 10

*Hundred E. Credit Corp. v. Eric Schuster Corp.*, 515 A.2d 246

   (N.J. Super. Ct. App. Div. 1986) ......................................................................................... 13

*Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844 (1982)......................................................... 9

*Lemelledo v. Beneficial Mgmt. Corp. of Am.*, 696 A.2d 546 (1997) ........................................... 13

*Lucarelli v. DVA Renal Healthcare, Inc.*, No. 08-0049, 2009 WL 262431

   (S.D. Ohio Feb. 3, 2009)....................................................................................................... 16

*Macedo v. Dello Russo*, 840 A. 2d 238 (N.J. 2004) ..................................................................... 11

*Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792  (9th Cir. 2003)...................................... 6

*McKenna v. Ortho Pharm. Corp.*, 622 F.2d 657 (3d Cir. 1980)................................................... 12

*Morgan Home Fashions, Inc. v. UTI, United States, Inc.*, No. 03-772, 2004 WL 1950370

   (D.N.J. Feb. 9, 2004)............................................................................................................ 16

*Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008)........................................... 2, 3, 4, 9

*Pinker v. Roche Holdings Ltd.*, 292 F.3d 361 (3d Cir. 2002) ........................................................ 2

*Reed v. Chambersburg Area School Dist.*, 951 F. Supp. 2d 706 (M.D. Pa. 2013)........................ 9

*Rose Art Indus. Inc. v. Swanson*, 235 F.3d 165 (3rd Cir. 2000) ................................................... 4

*Safeco Ins. Co. of Am. v. Wetherill*, 622 F.2d 685 (3d Cir. 1980) .............................................. 12

*Sleep Science Partners v. Lieberman*, No. 09–04200 CW, 2010 WL 1881770

   (N.D. Cal. May 10, 2010) ...................................................................................................... 7

*Skeer v. EMK Motors, Inc.*, 455 A.2d 508 (N.J. App.Div.1982).................................................. 13

*Tonka Corp. v. Rose Art Indus., Inc.*, 836 F. Supp. 200 (D.N.J. 1993) ....................................... 15

*Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992) ........................................................... 6

*Wal-Mart Stores v. Samara Brothers,* 529 U.S. 205 (2000) ...................................................... 8, 9

**Statutes**

N.J. Stat. Ann. § 56:8-2 ................................................................................ 14, 15, 16, 17

**Rules**

Fed. R. Civ. P. 12 ........................................................................................ 2, 15

Fed. R. Civ. P. 15 ............................................................................................ 17

Fed. R. Civ. P. 8 ....................................................................................... 2, 3, 5

Fed. R. Civ. P. 9 ............................................................................................. 14

Fed. R. Evid. 406 ............................................................................................. 16

**Treatises**

5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure

§ 1182 (3d ed. 2004) ............................................................................. 2, 3

J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 8:1 (4th ed. 1996) .... 6

## INTRODUCTION

Defendant Telebrands Corp. ("Telebrands") has blatantly and willfully copied the Bunch O Balloons product in violation of Plaintiff Zuru's intellectual property rights and New Jersey state law.  As discussed more fully below, Telebrands' motion to dismiss Counts I and IV of the Complaint and to strike other portions of the complaint is based on numerous misinterpretations of the law.  Accordingly, ZURU respectfully requests that this Court dismiss Telebrands' motion.[1]

## FACTS

Josh Malone developed a revolutionary toy product that allows someone to fill as many as 100 water balloons in approximately 60 seconds.  Mr. Malone branded the product as "Bunch O Balloons," and the product has enjoyed great success and notoriety, including a Kickstarter campaign that was fully funded to its initial $10,000 in less than twelve hours and that within five days, the project had received over $500,000 in startup funding.  In and around July 2014, the Bunch O Balloons product was featured in numerous nationwide media spots: from the *Today Show* and *Good Morning America*, to *Time*, *People*, and *Sports Illustrated* magazines, and on websites such as The Huffington Post, Gizmodo, and ARS Technica, amongst others.  Plaintiff ZURU is the exclusive licensee of the Bunch O Balloons product and associated intellectual property.

In direct competition with ZURU, defendant Telebrands began marketing a virtually identical product in the identical marketplace under the similar name, "Balloon Bonanza."

---

[1] ZURU is re-filing its opposition to Telebrands's motion to dismiss. As background, Telebrands filed a partial motion to dismiss ZURU's complaint (Dkt. 47) on March 6, 2015. ZURU opposed that motion on April 7, 2015. (Dkt. 69.) On October 23, 2015, an order was entered administratively terminating Telebrands's motion to dismiss. (Dkt. 153.) On December 4, the Court reinstated Telebrands's motion to dismiss (Dkt. 170.) Out of an abundance of caution, ZURU hereby re-files its prior opposition to Telebrands's motion to dismiss and incorporates by reference herein the opposition it already filed. (Dkt. 69.)

Telebrands has engaged in a concerted effort to appropriate intellectual property related to the Bunch O Balloons product in an effort to confuse customers into believing that its Balloon Bonanza product was the same or related to Plaintiff's innovative Bunch O Balloons product.

On January 27, 2015, ZURU commenced this action against Telebrands in order to protect its intellectual property and halt Telebrands' unlawful activities.  Telebrands argues that ZURU is merely attempting to protect an "un-patented" product and reaffirms that "product is not protected by any United States patent."   (Telebrands' Br. (Dkt. No. 47-1) at 1-2.) Telebrands' focus on patents is misplaced and, frankly, baffling.  This action does not include any patent related claims, and ZURU's complaint does not allege that it has any patents or that Telebrands has infringed any patent.  However, ZURU does hold the license to other important and enforceable rights—including trade dress, trademark, and copyright—and ZURU has appropriately pled an action to enforce those rights.

## ARGUMENT

### I.      PLEADING STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain: "(1) a short and plain statement of the grounds for the court's jurisdiction. . . , (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for the relief sought." The purpose of a complaint is "to inform the opposing party and the court of the nature of the claims and defenses being asserted by the pleader and, in the case of an affirmative pleading, the relief being demanded."   5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1182 (3d ed. 2004).

In reviewing a motion to dismiss for failure to state a claim under 12(b)(6), a Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the

plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n. 7 (3d Cir. 2002)). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Third Circuit summarized the Supreme Court's formulation of the pleading standard: "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips*, 515 F.3d at 234 (quoting *Twombly,* 550 U.S. at 556).

## II.  COUNT I (TRADE DRESS INFRINGEMENT)

In support of its motion to dismiss, Telebrands brings to the Court's attention a number of cases dealing with the nuance of trade dress. Telebrands, ignoring ZURU's actual Complaint and the overwhelming weight of authority, attempts to paint a picture of trade dress protection as a disfavored remedy, using words such as "most often," "particular caution" and "almost invariably." (Telebrands' Br. at 3.) ZURU does not agree with this disparagement of an important intellectual property right, but more importantly, this debate over the value and scope of trade dress protection is not before the Court in this motion.

ZURU's complaint includes a short and plain statement of the claims showing that ZURU is entitled to relief that puts Telebrands on notice of the claims being asserted. *See* Fed. R. Civ. P. 8(a)(2) and Wright & Miller, § 1182. To grant Telebrands' motion, the Court must conclude that ZURU's complaint does not suggest the elements of a trade dress claim and that there is no reasonable expectation that discovery will reveal evidence of those elements. *See*

3

*Phillips*, 515 F.3d at 234.

In a complaint for trade dress infringement, the plaintiff is required to prove that "(i) the trade dress is distinctive, either because it is inherently distinctive or because it has acquired distinctiveness; (ii) the trade dress is nonfunctional; and (iii) the defendant's use of plaintiff's trade dress is likely to cause consumer confusion." *Rose Art Indus. Inc. v. Swanson*, 235 F.3d 165, 172 (3rd Cir. 2000) (quoting *Duraco Prods., Inc. v. Joy Plastic Enters., Ltd.*, 40 F.3d 1431, 1439 (3d Cir. 1994).) As discussed more fully below, ZURU's complaint articulates facts that, once proven, will meet each of these requirements and show that Telebrands has infringed ZURU's trade dress.

### A.    ZURU Alleges that Its Product Is Distinctive

In its complaint, ZURU repeatedly alleges that the Bunch O Balloons product design has a "distinctive product configuration." (*See, e.g.,* Compl. ¶¶ 18, 30.) Unless the Court concludes that ZURU cannot possibly prove that the Bunch O Balloons product is distinctive, this element cannot form a basis for granting Telebrands' motion. *See Phillips*, 515 F.3d at 234.

### B.    The Question of Whether a Trade Dress Is Nonfunctional Is a Factual Question that Must Be Resolved in ZURU's Favor

ZURU alleges that Telebrands made and marketed "a product with an appearance virtually identical to the [Bunch O Balloons] distinctive product configuration trade dress" and that Telebrands has "damaged and impaired that part of ZURU's goodwill symbolized by the distinctive product configuration trade dress." (Compl. ¶ 30.) Telebrands asserts that these allegations fail to state a claim for trade dress infringement because trade dress that is entirely functional in all aspects is unprotectible. (Telebrands' Br. at 5-6.) Whether the Bunch O Balloons product configuration is functional or not is a factual question that must be resolved in ZURU's favor when deciding this motion. *Ciba-Geigy Corp. v. Bolar Pharm. Co., Inc.*, 747

4

F.2d 844, 850 (3d Cir. 1985) ("[a] finding of nonfunctionality is a finding of fact").  Again, unless the Court concludes that there is no way ZURU can prove that the Bunch O Balloons product configuration is nonfunctional, this element cannot form a basis for granting Telebrands' motion.

### C.    ZURU Alleges that Telebrands' Use of ZURU's Trade Dress Causes Consumer Confusion

ZURU alleges that "Telebrands is inducing purchasers and others to believe, contrary to fact, that the goods or services sold by Telebrands are rendered, sponsored, or otherwise approved by, or connected with ZURU."  (Compl. ¶ 30.)  ZURU further alleges that "Telebrands' use of a confusingly similar product configuration trade dress has resulted in a false designation of origin and a false and misleading representation."  (*Id.* ¶ 31.)  Again, the truth of this assertion must be resolved in ZURU's favor when deciding Telebrands' motion, and this element cannot form a basis for granting Telebrands' motion.

Accordingly, ZURU's complaint articulates facts that, once proven, will meet each of the elements of a claim for trade dress infringement sufficient to inform Telebrands and the court of the nature of ZURU's claim.

### D.    Telebrands Attempts to Introduce Issues that Are Not Applicable at this Point in the Proceedings

Telebrands argues that Zuru has "failed to state a claim for trade dress infringement for at least three reasons: (1) it has not articulated its trade dress; (2) it is [*sic*] not alleged that its trade dress is non-functional; and (3) it has not alleged that its product configuration trade dress has acquired secondary meaning."  (Telebrands' Br. at 4.)  Although couched in terms of the sufficiency of the facts alleged in the Complaint, these issues go far beyond the face of the Complaint and the requirements of Rule 8.  Indeed, these arguments are either inaccurate or

inappropriate at this stage of the litigation.  ZURU has presented a straight-forward product configuration trade dress claim, and Telebrands attempts to distract from that fact by citing a litany of the most egregious cases where attempts were made to stretch trade dress protection beyond its legal limitations.  Effectually, Telebrands attempts to mislead the Court into believing that ZURU's claim is somehow similar to the claims asserted in those case in hopes of getting ZURU's straight-forward claim dismissed.

### 1.  ZURU Has Sufficiently Articulated Its Trade Dress

First, Telebrands contends that Zuru "must describe or articulate the elements of its purported trade dress" (Telebrands' Br. at 4), but this contention is based on a misunderstanding of the requirements of trade dress protection.  "Trade dress protection applies to 'a combination of any elements in which a product is presented to a buyer,' including the shape and design of a product."  *Art Attacks Ink, LLC* v. *MGA Entm't Inc*., 581 F.3d 1138, 1145 (9th Cir. 2009) (quoting J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 8:1, at 8-3 (4th ed. 1996)).  Trade dress is not reduced to individual elements that are separable from the overall design.  *Mattel, Inc. v. Walking Mountain Prods*., 353 F.3d 792, 808 n.13 (9th Cir. 2003) ("Trade dress involves 'the total image of a product and may include features such as size, shape, color or color combination, texture, graphics, or even particular sales techniques.'") (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 765 n.1 (1992)).

In evaluating a trade dress claim, a court must not focus on individual elements, "but rather on the overall visual impression that the combination and arrangement of those elements create."  *Clicks Billiards, Inc. v. Sixshooters, Inc.,* 251 F.3d 1252, 1259 (9th Cir. 2001).  "Trade dress is the composite tapestry of visual effects."  *Id.*  ZURU has identified its Bunch O Balloons product as a distinctive design.  Whether or not the Bunch O Ballons is such a distinctive design

is a factual question that must be resolved in ZURU's favor in deciding Telebrands' motion. *See, e.g.*, *Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 1001 (2d Cir. 1997); *Equine Techs., Inc. v. Equitechnology, Inc.*, 68 F.3d 542, 544 (1st Cir.1995); *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1383 (9th Cir. 1987).

The cases that Telebrands relies on to raise this issue simply do not apply to, and bear no factual similarity to, the facts of this case. For example, Telebrands cites *Sleep Science Partners v. Lieberman*, No. 09–04200 CW, 2010 WL 1881770 (N.D. Cal. May 10, 2010), as an example where a trade dress infringement claim was dismissed "because the plaintiff failed to define its trade dress with sufficient clarity, referring instead only to the 'look and feel.'" (Telebrands' Br. at 5.) However, *Sleep Science* differs significantly from the present case. In *Sleep Science*, the plaintiff sought "trade dress protection of its website, telephone ordering system and television commercial." *Sleep Science*, 2010 WL 1881770. The court concluded, "Plaintiff has not clearly plead that it defines its trade dress as these three marketing components taken in combination. Nor has it alleged that these elements interact to create a particular visual impression." *Id.* Here there is no such confusion. ZURU has clearly identified the product configuration of the Bunch O Balloons product as the infringed trade dress (*see, e.g.*, Compl. ¶ 30), not generally unprotectible and non-trade dress items such as a website, telephone ordering system, and television commercial.

Telebrands also relies on *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303 (3rd Cir. 2014). (Telebrands' Br. at 4-5.) But this case is similarly inapplicable. In *Fair Wind Sailing*, the plaintiff asserted trade dress protection for "'the combination of its choice to solely employ catamaran vessels' and its 'unique teaching curriculum, student testimonials, and registered domain name,' which 'all combine to identify Fair Wind's uniquely configured business to the

general public.'" *Fair Wind Sailing*, 764 F.3d at 309.  The court concluded that the asserted trade dress was "simply a hodgepodge of unconnected pieces of its business, which together do not comprise any sort of composite visual effect." *Id*. at 310.  Again, this contrasts sharply with ZURU's clear identification of the Bunch O Balloons product configuration as the infringed trade dress. *Cf. Fair Wind Sailing*, 764 F.3d at 309 (although "'any 'thing' that dresses a good can constitute trade dress . . . the 'thing' must 'dress[ ] a good.' That is, the alleged trade dress must create some visual impression on consumers. Otherwise, there is simply no 'dress' to protect.") (quoting *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 630 (6th Cir. 2002)).

### 2.   *ZURU Can Prove that Its Trade Dress Is Non-Functional.*

Telebrands contends that Count I of the Complaint must be dismissed because "Zuru did not allege that its trade dress in [sic] non-functional."  (Telebrands' Br. at 6.)  Telebrands is incorrect and moreover, this is not the standard articulated by the cases Telebrands cites in support of its own conclusion.  First, Telebrands relies on *Fair Wind Sailing*.  (Telebrands' Br. at 6.)  The Third Circuit in *Fair Winds Sailing* did not dismiss the complaint because the plaintiff failed to allege that the trade dress was nonfunctional.  Rather, the court concluded that the plaintiff's "trade dress, as pleaded, is functional in nature."  *Fair Wind Sailing*, 764 F.3d at 305.  In other words, the court concluded that the plaintiff could not possibly prove that its trade dress was nonfunctional given that the Plaintiff pleaded trade dress that was entirely functional in nature.  The trade dress at issue in *Fair Wind Sailing* included "the combination of its choice to solely employ catamaran vessels" and the plaintiff's "unique teaching curriculum, student testimonials, and registered domain name"—none of which included the configuration or "dress" of any actual good or product.  *Id*. at 309.  In contrast to this amorphous collection of materials,

ZURU alleges that its trade dress consists of the distinctive product configuration of ZURU's Bunch O Balloons product (even providing photographic evidence of that distinctive product configuration), and courts have held that such product configuration can be non-functional.  *See, e.g., Wal-Mart Stores v. Samara Brothers,* 529 U.S. 205, 209 (2000) (discussing various cases finding that "the design of a product" can be protected trade dress).

Likewise, Telebrands' reliance on *Reed v. Chambersburg Area School District*, 951 F. Supp. 2d 706 (M.D. Pa. 2013), is misplaced.   In *Reed*, the plaintiff sought to protect aspects of dance performances that the court concluded were "broad enough to cover any organized dance program." *Id.* at 724.  ZURU has adequately plead its claims and *Reed*'s attempt to stretch the bounds of trade dress protection does not address the question of whether there is a "reasonable expectation in this case that discovery will reveal evidence" that ZURU's trade dress is nonfunctional. *See Phillips,* 515 F.3d at 234 (quoting *Twombly,* 550 U.S. at 556).

### 3.   ZURU Alleges that Its Trade Dress Has Secondary Meaning

Telebrands contends that Count I of ZURU's complaint must be dismissed because ZURU "has not alleged that its product configuration trade dress has acquired secondary meaning." (Telebrands' Br. at 4.)  Telebrands' contention is inaccurate.  The Supreme Court has defined "secondary meaning" as when, "in the minds of the public, the primary significance of a [mark] is to identify the source of the product rather than the product itself." *Wal-Mart Stores*, 529 U.S. at 211 (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851, n.11 (1982)). ZURU alleges a variety of facts that demonstrate that the product configuration trade dress has come to identify the source of the product.  (*See, e.g.,* Compl. ¶ 16 ("Through the Kickstarter campaign and associated product sales, as well as the subsequent vast nationwide television and print media attention, the public has come to associate the unique product configuration of the

Bunch O Balloons product with Tinnus Enterprises (to which ZURU holds an assignment of rights and goodwill)."); ¶ 20 ("ZURU's BUNCH O BALLONS mark has been heavily advertised and promoted in connection with its goods and has garnered national and international recognition among the consuming public.").)

### E.   ZURU Sufficiently Pled Count I of Its Complaint

The purpose of a complaint is to put the defendant on notice of the claims asserted against him.  As discussed above, Count I of ZURU's complaint puts Telebrands on notice that ZURU believes Telebrands has misappropriated its trade dress rights in the configuration of the Bunch O Balloons product.  Telebrands may disagree about the scope of ZURU's trade dress protection or whether the product configuration is nonfunctional, but Telebrands cannot reasonably contend that it does not know what it is accused of doing.  Accordingly, ZURU respectfully asks that the Court deny Telebrands' motion to dismiss Count I of the Complaint.

## II.   COUNT IV (NEW JERSEY CONSUMER FRAUD ACT)

### A.   ZURU Has Standing under the New Jersey Consumer Fraud Act

Telebrands contends that ZURU lacks standing to bring suit under the New Jersey Consumer Fraud Act ("NJCFA") because ZURU "does not allege that it engaged in a 'consumer-oriented transaction' with Telebrands." (Telebrands' Br. at 8.)  However, Telebrands' contention does not properly reflect the state of the law regarding standing of competitors to bring suit under the NJCFA.

Contrary to Telebrands' argument, this Court has repeatedly held that *direct* competitors (in addition to consumers) have standing to bring claims under the NJCFA.  *Hart v. Elec. Arts, Inc.*, 740 F. Supp. 2d 658, 669 (D.N.J. 2010) ("While Plaintiff is correct that some cases have held that competitors have standing under the statute, those cases refer to direct competitors of

the defendant, i.e., 'competitors in a commercial sense.'"); *800-JR Cigar, Inc. v. GoTo.com, Inc.*, 437 F. Supp. 2d 273, 295-96 (D.N.J. 2006) ("Consumers and commercial competitors have  standing to bring claims under the NJCFA."); *Conte Bros. Auto. v. Quaker State-Slick 50*, 992 F. Supp. 709, 716 n.12 (D.N.J. 1998) (noting that standing was conferred upon commercial competitors); *Gen. Dev. Corp. v. Binstein*, 743 F. Supp. 1115, 1131 (D.N.J. 1990) ("Although the New Jersey statute is broad, there is no New Jersey judge-crafted law which extends the act's scope beyond consumers and competitors in a commercial sense" (internal citation omitted)).

Contrary to this weight of authority, Telebrands relies on a single unpublished opinion (this Court's decision in *Church & Dwight*) to argue that ZURU does not have standing as a direct competitor.  (Telebrands' Br. at 7-8 (citing *Church & Dwight Co., Inc. v. SPD Swiss Precision Diagnostics GmbH*, Case No. 10-453 (FLW), 2010 WL 5239238, *9 (D.N.J. Dec. 16, 2010)).)  However, the court's decision in *Church & Dwight* rests on a misunderstanding of the prior New Jersey court decisions.

As the *Church & Dwight* court noted, the prior decisions of this Court upholding direct competitor standing under the NJCFA all cite to a New Jersey Chancery Division case, *Feiler v. New Jersey Dental Ass'n,* 191 N.J. Super. 426, 430-31 (Ch. Div. 1983).  In *Feiler*, the Plaintiff, a trade association of New Jersey Dentists, brought a common law unfair competition claim against a dentist who was employing deceptive billing practices.  *Id.* at 429.  When addressing the question of standing, the court found that the association has standing because its individual members clearly have standing as direct competitors of the defendant.  *Id.* at 431. ("A practicing New Jersey dentist has standing to complain that another dentist gains an unfair competitive advantage over him by fraudulent billing practices that enable him to promise and deliver cost savings to patients that are unavailable to patients of an honest practitioner.").

11

While numerous previous decisions of this Court (cited above) recognized the applicability of *Feiler* to virtually identical unfair competition claims under the NJCFA,[2] the *Church & Dwight* Court dismissed *Feiler* out of hand because it did not involve a claim under the NJCFA. *Church & Dwight*, 2010 WL 5239238, at *10. The Court did so without any analysis of the parallels between the policies underlying common law unfair competition and NJCFA claims. *Id.* Moreover, the approach embraced by the *Church & Dwight* Court and adopted by Telebrands yields an absurd result that turns the "learned professionals" exemption on its head because it creates a situation where *greater* remedies are available against supposedly exempt "learned professionals" than are available against non-professionals, which is directly contrary to the legislature's obvious intent in passing that exemption.

When interpreting claims under state law, federal district courts' "disposition of such cases must be governed by a prediction of how the state's highest court would decide were it confronted with the problem." *Safeco Ins. Co. of Am. v. Wetherill*, 622 F.2d 685, 688 (3d Cir. 1980) (quoting *McKenna v. Ortho Pharm. Corp.*, 622 F.2d 657, 661 (3d Cir. 1980)). Where, as in this case, the highest state court has not opined on the issue at hand, federal courts may look to a variety of sources, including the decisions of state courts. *See Church & Dwight*, 2010 WL 5239238, at *10 ("there are no New Jersey state court cases that directly address this issue"); *Safeco*, 622 F.2d at 688 (discussing sources that a federal court should use when predicting how the state's highest court would decide an issue).

When addressing the NJCFA and concluding that it does afford standing to direct

---

[2]   The sole reason that the *Feiler* case involved a claim for common law unfair competition rather than a claim under the NJCFA is because the *Feiler* plaintiff could not have brought claims under the NJCFA because dentists fall under the NJCFA's exception for "learned professionals." *See Macedo v. Dello Russo*, 840 A. 2d 238, 242 (N.J. 2004) ("Thus, today, forty years after the CFA was enacted, our jurisprudence continues to identify learned professionals as beyond the reach of the Act so long as they are operating in their professional capacities.").

competitors (on at least four prior occasions), this Court is presumed to have followed these guidelines. Indeed, allowing direct competitors standing under the NJCFA is entirely consistent with the scope and purpose of the act. As New Jersey courts have recognized, the expansive "language of the CFA evinces a clear legislative intent that its provisions be applied broadly in order to accomplish its remedial purpose, namely, to root out consumer fraud." *Lemelledo v. Beneficial Mgmt. Corp. of Am.*, 696 A.2d 546, 551 (1997). Specifically, the expansive language of the NJCFA states that, "Any 'person' who suffers 'any ascertainable loss of moneys or property' as a result of any 'practice declared unlawful' may bring an action; if successful, the plaintiff 'shall' recover treble damages, attorneys' fees and costs of suit." *Hundred E. Credit Corp. v. Eric Schuster Corp.*, 515 A.2d 246, 248 (N.J. Super. Ct. App. Div. 1986) (quoting N.J. Stat. Ann. § 56:8-2) (citing *Skeer v. EMK Motors, Inc.*, 455 A.2d 508 (N.J. App.Div.1982)).

Prior decisions of this Court have upheld direct competitor standing under the NJCFA and have recognized that the NJCFA should be applied broadly to allow for claims intended to root out consumer fraud. ZURU is a direct competitor of Telebrands, and as such, ZURU respectfully asks that the Court deny Telebrands' motion to dismiss Count IV of the Complaint for lack of standing.

**B.     ZURU Has Adequately Stated Its NJCFA Claim**

To state a claim under the NJCFA, a plaintiff must allege that the defendant engaged in an unlawful practice that caused an ascertainable loss to the plaintiff. *Frederico v. Home Depot*, 507 F.3d 188, 202 (3rd Cir. 2007) (citing *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462-465 (1994)).[3] In its Complaint, ZURU has specifically alleged that Telebrands engaged in an

---

[3] ZURU notes that the quotation attributed to the *Frederico* court by Telebrands at page 9 of its Brief does not appear anywhere in the *Frederico* decision. *Compare* Telebrands Br. 9 *with Frederico*, 507 F.3d at 202.

unlawful practice and that this unlawful practice caused ZURU an ascertainable loss. Specifically, ZURU alleges that, among other acts, Telebrands engaged in an unlawful practice by appropriating intellectual property related to the Bunch O Balloons product by creating a near exact copy of that product in an effort to confuse customers into believing that its Balloon Bonanza product was the same or related to Plaintiff's innovative Bunch O Balloons product; and, even more specifically, that Telebrands did so by appropriating copyrighted drawings of the Bunch O Balloons product and using a confusingly similar product name and product configuration. (*See, e.g.*, Compl. ¶ 9.)  In addition, ZURU alleges that the substantial similarities between the sound, meanings, and commercial impressions of the BUNCH O BALLOONS and BALLOON BONANZA marks, in addition to the identical or substantially similar nature of the goods and marketing channels of the parties, create a likelihood of consumer confusion between these two marks, which falsely suggests a relationship of sponsorship, approval, or affiliation between the parties.  (Compl. ¶ 24.)  These allegations are sufficient to put Telebrands on notice of the unlawful acts it is accused of committing.

ZURU also alleges an ascertainable loss, specifically: "If a consumer falsely or confusingly associated Telebrands' Balloon Bonanza product with ZURU's Bunch O Balloons product, Telebrands' negative reputation with the consuming public would irreparably harm ZURU's business reputation."  (Compl. ¶ 14.)  Even under the heightened pleading standard of Rule 9(b), "[t]he statute does not require that the loss be monetary nor that it must be plead beyond a reasonable degree of certainty."  *Arcand v. Brother Intern. Corp.*, 673 F.Supp.2d 282, 300 (D.N.J. 2009).

Finally, Telebrands' unlawful practices are the direct cause of the ascertainable loss.  As ZURU's Complaint alleges, by falsely or confusingly associated Telebrands' Balloon Bonanza

product with ZURU's Bunch O Balloons product, Telebrands' negative reputation with the consuming public will irreparably harm ZURU's business reputation.  (Compl. ¶ 14.)

Accordingly, ZURU respectfully asks that the Court deny Telebrands' motion to dismiss Count IV of the Complaint for failure to state a claim.

## III.    MOTION TO STRIKE

The Court should deny Telebrands' motion to strike paragraphs 10-13 of ZURU's Complaint.   First, Telebrands motion to strike was not timely filed.  The Federal Rules of Civil Procedure provide that a court may strike material from a pleading "on motion made by a party either ***before responding to the pleading*** or, if a response is not allowed, within 21 days after being served with the pleading." Fed. R. Civ. P. 12(f)(2) (emphasis added).  This Rule requires that a motion to strike be made before the party responds to the pleading.  In this instance, Telebrands did not file its motion to strike before responding to the pleading, but rather, filed a responsive pleading prior to and in conjunction with the motion to strike.  (*See* Telebrands' Ans. (Dkt. No. 46) and Telebrands' Motion (Dkt. No. 47) (both filed on March 6, 2015).)  Telebrands acknowledges this timing, asserting in its Answer that "The allegations contained in Paragraph[s] [10-13] of the Complaint are subject to a Motion to Strike filed concurrently herewith." (Telebrands Ans. ¶¶ 10-13.)

Even if Telebrands' motion to strike had been filed in a timely manner, the motion should not be granted.  Rule 12(f) of the Federal Rules of Civil Procedure permits a court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[M]otions to strike are usually 'viewed with disfavor' and will generally 'be denied unless the allegations have ***no possible relation*** to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues.'" *Garlanger v. Verbeke,* 223 F. Supp. 2d 596, 609

15

(D.N.J. 2002) (citing *Tonka Corp. v. Rose Art Indus., Inc.*, 836 F. Supp. 200, 217 (D.N.J. 1993)) (emphasis added).  "Rule 12(f) should be construed strictly against striking portions of the pleading on grounds of immateriality and if the motion is granted at all, the complaint should be pruned with care."  *Dicar, Inc. v. Stafford Corrugated Prods., Inc.*, No. 05-5426, 2009 WL 1796053, at *3 (D.N.J. June 22, 2009) (quoting *Morgan Home Fashions, Inc. v. UTI, United States, Inc.*, No. 03-772, 2004 WL 1950370, at *8 (D.N.J. Feb. 9, 2004)).  Thus, Rule 12(f) establishes a high bar for striking the portions of a pleading, as "the remedy will be granted only when the defect is plain, for where there is a semblance of a cause of action or defense set up in the pleading, its sufficiency cannot be determined on motion to strike it out."  *Morgan Home Fashions*, 2004 WL 1950370, at *8.

The paragraphs that Telebrands moves to strike discuss previous charges against Telebrands of intellectual property misappropriation and consumer fraud.  ZURU contends that it is Telebrands' routine business practice to copy the designs of others and rush them to market regardless of the intellectual property protections that may be in place.  Telebrands complains that these allegations "have nothing to do with the facts of this case."  (Telebrands' Br. at 11.)  But, evidence of an organization's routine practice "may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice."  Fed. R. Evid. 406; *see also Church & Dwight*, 2010 WL 5239238, *12 (concluding that similar allegations regarding a prior FTC investigation would be relevant in "showing a 'pattern of wrongdoing'"; adding that the defendant had not "established that these allegations have no *possible* relation to the controversy."); *Lucarelli v. DVA Renal Healthcare, Inc.*, No. 08-0049, 2009 WL 262431, at *6 (S.D. Ohio Feb. 3, 2009) (denying Defendant's motion to strike the portion of the pleading that alleged Defendant's parent company was previously subject to a

fraud investigation, holding: "[a]t this point in the proceedings, the court cannot be certain whether or not the allegations are relevant to the claims made by the plaintiffs and therefore cannot consider the allegations . . . as so scandalous, redundant, impertinent or immaterial as to require that they be struck from the complaint.").

Accordingly, in light of the extremely high bar for a motion to strike and the obvious relevance and potential admissibility of the allegations Telebrands seeks to strike, Telebrands' motion to strike should be denied.

## IV.    LEAVE TO AMEND

Although, for the reasons discussed above, ZURU believes Telebrands' motion to dismiss should be denied in its entirety, if the Court grants that motion in whole or in part, ZURU should be granted leave to amend its Complaint.  *See* Fed. R. Civ. P. 15(a).

Leave to amend a complaint is to be "freely granted" and should be allowed "whenever there has not been undue delay, bad faith on the part of the plaintiff, or prejudice to the defendant as a result of the delay." *Adams v. Gould, Inc.*, 739 F.2d 858, 864, 867-68 (3d Cir. 1984).  In general, there is no "undue delay" if the complaint is amended at or prior to the summary judgment stage.  *See id.* at 869 ("Since amendment of a complaint is not unusual at the summary judgment stage of the case, we would not characterize plaintiffs' failure to amend their complaint earlier as 'undue delay.'") (citations omitted).  A showing of "bad faith" generally requires "extrinsic evidence," as mere conclusory allegations of bad faith are insufficient.  *See id.* at 868. Finally, while a party may be "prejudiced" if the plaintiff changes claims when the case has gone to trial or there has been extensive discovery, mere additional legal fees resulting from an amended complaint is not prejudicial.  *Id.* at 869.

Here, at this early stage in the litigation, it is self-evident that there is no undue delay or prejudice.  The litigation has not reached the summary judgment stage, and there is still ample opportunity for the parties to conduct discovery.  *See id.* at 869.  Nor is there any evidence of bad faith.  Therefore, if the Court grants Telebrands' Motion to Dismiss in whole or in part,  ZURU asks that the Court grant ZURU leave to amend its complaint.

CONCLUSION

For the reasons set forth herein, ZURU respectfully requests that the Court deny Telebrands' motion to dismiss Counts I and IV and its motion to strike paragraphs 10-13 of ZURU's Complaint.  However, should the Court find that neither of these remedies are appropriate, ZURU asks that the Court grant ZURU leave to amend its pleading.

Dated: December 22, 2015

Respectfully submitted,

\_\_\_\_s/   Jennifer Mara_____
Baldassare & Mara, LLC
570 Broad Street, Suite 900
Newark, New Jersey 07102

Susan C. Cassell
Law Office of Susan C. Cassell
419 Lucille Court
Ridgewood, New Jersey 07450

Cortland Putbrese (admitted *pro hac vice*)
Dunlap Bennett & Ludwig PLLC
2307 East Broad Street, Suite 301
Richmond, Virginia 23223

Daniel Finnegan (Dist. N.J. admission)
Thomas M. Dunlap (admitted *pro hac vice*)
David Ludwig (admitted *pro hac vice*)
Dunlap Bennett & Ludwig PLLC
1717 Pennsylvania Avenue, NW, Suite 1025
Washington, District of Columbia 20006

*Counsel for the Plaintiff*