Jennifer Mara
Baldassare & Mara, LLC
570 Broad Street, Suite 900
Newark, New Jersey 07102
Tel.:  (973) 200-4066
Fax:  (973) 556-1076
jmara@mabalaw.com

Susan C. Cassell
Law Office of Susan C. Cassell
419 Lucille Court
Ridgewood, New Jersey 07450
Tel.: 201-445-3894
Fax: 201-445-3894
cassell.susan@gmail.com

*Counsel for Plaintiff ZURU Ltd.*

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **ZURU LTD.,** | ) | Civil Action No. 15-CV-00548-CCC-MF |
| | ) | |
| Plaintiff, | ) | Hon. Claire C. Cecchi, U.S.D.J. |
| | ) | Hon. Mark Falk, U.S.M.J. |
| v. | ) | |
| | ) | |
| **TELEBRANDS CORP.,** | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

---

## PLAINTIFF ZURU LTD.'S OPPOSITION TO DEFENDANT
## TELEBRANDS CORP.'S MOTION FOR A PRELIMINARY INJUNCTION

---

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ……………………………………………………………………iii

INTRODUCTION ............................................................................................................... 1

FACTS .................................................................................................................................. 2

I.      Josh Malone Invents a Unique and Revolutionary Toy Product ……………………... 2

II.     Mr. Malone Protects His Invention, Raises Funds, and Licenses the Intellectual

Property Rights to ZURU ……………………………………………….…………...3

III.    Telebrands Deliberately Copies Bunch O Balloons and ZURU Acts to Protect its

Intellectual Property …………………………………………………………………… 4

IV.    Telebrands Responds to ZURU's Lawsuit and a Consent Order Is Entered ................. 5

V.     A Texas Federal Court Enters a Preliminary Injunction against Telebrands ................. 6

VI.    ZURU Writes a Letter Advising ███████████ about the Preliminary Injunction ....... 7

VII.   ZURU Seeks Relief to Prevent Telebrands from Abusing the New Jersey Consent

Order ....................................................................................................................... 8

VIII.  Telebrands Retaliates ................................................................................................ 9

ARGUMENT ....................................................................................................................... 11

I.      Telebrands Has Not Demonstrated That It Has Been Irreparably Harmed ................. 12

II.     Telebrands Will Not Succeed on the Merits of Its Claims ........................................... 16

     A.  Telebrands's Purported Tortious Claims Fail under the Doctrine of Preemption.......... 17

     B.  Telebrands Seeks Relief that Violates the U.S. and New Jersey Constitutions ............. 20

         i.   The First Amendment and New Jersey Constituion Preclude the Relief that

Telebrands Seeks ………………………….…………………………….. 20

i

       ii.   ZURU Has Never Waived Any of Its Constitutional Rights ……………….. 23

   C.  Telebrands's Tortious Interference Claims are Barred by the Noerr-Pennington

       Doctrine …………………………………………………………….………… 24

   D.   Telebrands Cannot and Will Not Prevail on Its Tortious Interference Claims …...…… 27

III.     The Balance of Harms Greatly Favors ZURU ………………………………….. 29

IV.    The Public Interest Strongly Disfavors an Injunction ………………..…………. 30

CONCLUSION …………………………………………………………...…………. 30

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*800 Adept, Inc. v. Murex Sec., Ltd.*, 539 F.3d 1354 (Fed. Cir. 2008) ……..……………… 17, 19

*Acierno v. New Castle County*, 40 F.3d 645 (3d Cir. 1994) ……………………………… 12, 15

*Adams v. Freedom Forge Corp.*, 204 F.3d 475 (3d Cir. 2000) …………………………… 12, 15

*A.D. Bedell Wholesale Co. v. Triangle Candy & Tobacco Co.*, 263 F.3d 239

   (3d Cir. 2001) …………………………………………………………………………… 25, 27

*Am. Millennium Ins. Co. v. First Keystone Risk Retention Grp., Inc.*, No. 08-2821, 2009 U.S.

   App. LEXIS 11981 (3d Cir. 2009) ……………………………………………………... 29

*Arthur Treacher's Franchisee Litigation*, 689 F.2d 1137 (3d Cir. 1982) ………………….. 12, 15

*Barq's Inc. v. Barq's Beverages, Inc.*, 677 F. Supp. 449 (E.D. La. 1987) …………………….. 26

*Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508 (1972) ………………………… 25

*City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114 (2d Cir. 2011) ……………………… 21

*Clarke Transp. Servs. v. Haskins*, No. 06-785, 2006 U.S. Dist. LEXIS 38137 (E.D. Pa. June 8,

   2006) ……………………………………………………………..…………………….. 12

*Coastal States Marketing, Inc. v. Hunt*, 694 F.2d 1358 (5th Cir. 1983) ……………………….. 25

*Davric Maine Corp. v. Rancourt*, 216 F.3d 143 (1st Cir. 2000) …………………………… 25, 27

*DeAngelo Bros., Inc. v. Clarius*, No. 3:CV-06-0466, 2006 U.S. Dist. LEXIS 57846 (M.D. Pa.

   Aug. 17, 2006) …………………………………………………………………………12, 13

*Decosta v. English*, No. 11-2651 (MAH), 2012 U.S. Dist. LEXIS 20515, 2012 WL 528760

   (D.N.J. Feb. 16, 2012) …………………………………………………………………… 29

*Digiorgio Corp. v. Mendez & Co.*, 230 F. Supp. 2d 552 (D.N.J. 2002) ……………………….. 27

*DirecTV, Inc. v. Lewis*, No. 03-CV-6241-CJS-JWF, 2005 U.S. Dist. LEXIS 8187 (W.D.N.Y.

    Apr. 29, 2005) …………………………………………………………………….. 25

*Dublirer v. 2000 Linwood Ave. Owners, Inc.*, 220 N.J. 71 (N.J. 2014) ………………………... 21

*ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223 (3d Cir. 1987) …………………………………... 12

*E.R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961) …………… 25

*Giles v. Phelan, Hallinan & Schmieg, L.L.P.*, No. 11-6239 (JBS/KMW), 2013 U.S. Dist. LEXIS

    78161 (D.N.J. June 4, 2013) ……………………………………………………………… 24

*Glasco v. Hills*, 558 F.2d 179 (3d Cir. 1977) ……………………………………………...… 12

*Glass Equip. Dev., Inc. v. Besten, Inc.*, 174 F.3d 1337 (Fed. Cir. 1999) ………………………… 25

*Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797 (3d Cir. 1989) ……………....... 15

*Johnson v. Zerbst*, 304 U.S. 458 (1938) …………………………………………………… 23, 24

*Macario v. Pratt & Whitney Canada, Inc.*, No. 90-3906, 1993 U.S. Dist. LEXIS 1856 (E.D. Feb.

    11, 1993) ………………………………………………………………………….. 24

*Madison Square Garden Corp v. Braddock*, 90 F.2d 924 (3d Cir. 1997) ……………………... 11

*Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d 700 (Fed. Cir. 1992) …………………………... 25

*Matsushita Electronics Corp. v. Loral Corp.*, 974 F. Supp. 345 (S.D.N.Y. 1997) ……………. 26

*Mazdabrook Commons Homeowners' Ass'n v. Khan*, 210 N.J. 482 (2012) ………………. 21, 23

*Mazurek v. Armstrong*, 520 U.S. 968 (1997) ……………………………………………... 11

*McGuire Oil Co. v. Mapco, Inc.*, 958 F.2d 1552 (11th Cir. 1992) ………...……………....... 25

*Morton v. Beyer*, 822 F.2d 364, 371 (3d Cir. 1987) ……………………………………………… 12

*Noerr Motor Freight, Inc.*, 365 U.S. at 138 ………………………………………...…… 25, 27

*Pactiv Corp. v. Perk-Up, Inc.*, No. 08-05072 (DMC), 2009 U.S. Dist. LEXIS 72796 (D.N.J. Aug.

    18, 2009) ……………………………………………………………………………….. 28

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37 (1983) …………………….. 20

*Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077 (8th Cir. 1999) …………………………… 25

*Quickie Mfg. Corp. v. Libman Co.*, 180 F. Supp. 2d 636 (D.N.J. 2002) ……………………… 15

*Rawls v. Penn. Dept. of Corrections*, No. 09-1583, 2009 U.S. App. LEXIS 13458 (3d Cir. June

   22, 2009) …………………………………………………………………………….... 11, 30

*Select Comfort Corp. v. Sleep Better Store, LLC*, 838 F. Supp. 2d 889 (D. Minn. 2012) …….... 26

*Sesolinc GRP, Inc. v. Metal-Con, Inc.*, No. 6:11-cv-96, 2012 U.S. Dist. LEXIS 80868, at

   (S.D. Ga. June 11, 2012) …………………………………………………………..…. 20, 21

*Sosa v. DIRECTV, Inc.*, 437 F.3d 923 (9th Cir. 2006) ………..……………………….. 25, 26

*Tenn. Secondary Sch. Ath. Ass'n v. Brentwood Acad.*, 551 U.S. 291 (2007) ……………..… 20

*We, Inc. v. City of Philadelphia*, 174 F.3d 322 (3d Cir. 1999) ………………………….... 25

## Other Authorities

New Jersey Constitution ……………………………………………………… 20, 21, 22, 23

First Amendment ………………………………………………………… 20, 21, 23, 24, 26

Noerr-Pennington Doctrine ……………………………………………… 24, 25, 26, 27

## INTRODUCTION

ZURU, a small family-owned toy company, is the exclusive licensee of the intellectual property rights related to the Bunch O Balloons product that was invented by Josh Malone ("Mr. Malone"), the owner of Tinnus Enterprises, LLC ("Tinnus"). The defendant Telebrands Corporation ("Telebrands") marketed a product under the name "Balloon Bonanza," the promotion and marketing of which misappropriated the intellectual property related to the Bunch O Balloons product with advertising that is confusing and misleading to consumers.

Long before Telebrands first decided to sell its infringing Balloon Bonanza product, Mr. Malone had invented, manufactured, marketed, accepted customer orders, and sold his revolutionary toy product.  In August 2014, Mr. Malone and ZURU decided to partner with each other for the production, marketing, and sales of the Bunch O Balloons product. Shortly after that, they learned to their complete surprise that Telebrands had usurped Mr. Malone's idea and was marketing a virtually identical copy of the Bunch O Balloons product. Indeed, the evidence in this case demonstrates without question that Telebrands engaged in a deliberate scheme to knock off ZURU's successful Bunch O Balloons product.

Incredibly, Telebrands told ZURU's customers on numerous occasions that Telebrands's knock off did not infringe ZURU's intellectual property—even though such representations were not true. Telebrands apparently did so until a Texas federal district court enjoined Telebrands and ordered it to stop marketing and selling its Balloon Bonanza product.

After learning of the injunction against Telebrands, ZURU wrote a customer, advising the customer of this injunction and describing the contours of ZURU's patent. ZURU did so in a truthful, factual, neutral, and non-inflammatory manner. Notably, ZURU never once stated in that correspondence that Telebrands's new Battle Balloons product infringes ZURU's patent.

Indeed, ZURU never even referenced Telebrands's name or the Battle Balloons product name in the letter.

Despite these facts, Telebrands now seeks the extreme and extraordinary relief of a preliminary injunction. Telebrands does so because it does not want ZURU telling customers that Telebrands has been enjoined. By its present motion, Telebrands seeks to impose an unconstitutional gag order on ZURU that, among other things, improperly suppresses ZURU's free speech rights. Such a gag order is patently unfair, particularly when ZURU must engage in truthful speech to correct the falsehoods that Telebrands has spread in the marketplace regarding ZURU's intellectual property.

This Court should deny Telebrands's drastic request for a number of reasons. First, Telebrands has failed to proffer a single shred of credible evidence that ZURU's letter somehow irreparably harmed Telebrands. For that reason alone, an injunction is not proper here. Second, the underlying tortious interference claims upon which Telebrands's motion is based summarily fail. That is because those state tort law claims are preempted by federal law. As the underlying claims fail, so too does Telebrands's motion. Third, the First Amendment precludes the relief Telebrands seeks here—relief that is clearly unconstitutional. It would be reversible error for a court to grant a motion such as this. Telebrands's motion should thus be denied.

## FACTS

I. Josh Malone Invents a Unique and Revolutionary Toy Product

In early 2014, Josh Malone finalized his designs for a revolutionary new toy product, now known as "Bunch O Balloons." (Dkt. 67 at p. 2.) Bunch O Balloons is a unique apparatus that allows an individual to fill over one-hundred water balloons in approximately sixty seconds, which automatically tie themselves. (*Id.*)

II. Mr. Malone Protects His Invention, Raises Funds, and Licenses the Intellectual
Property Rights to ZURU

On February 5, 2014, Mr. Malone developed the first successful Bunch O Balloons prototype. (Dkt. 67 at p. 3.) Immediately thereafter on February 7, 2014, Mr. Malone, through his company Tinnus Enterprises, LLC ("Tinnus"), filed a patent application with the United States Patent and Trademark Office ("USPTO") for his invention. (*Id.*) On June 9, 2015, the USPTO issued to Tinnus United States Patent No. 9,051,066 ("'066 Patent"), entitled "System and Method for Filling Containers with Fluids."

On May 27, 2014, Mr. Malone, through Tinnus, filed a USPTO trademark application for the standard character mark incorporating the literal elements "BUNCH O BALLOONS." (Dkt. 67 at p. 3.) On March 24, 2015, the USPTO registered the BUNCH O BALLOONS mark on the principal register. (*Id.*) To secure additional protection, Mr. Malone, through Tinnus, obtained U.S. Copyright Registration No. VA 1-935-444 relating to the Bunch O Balloons invention. (*Id.*)

To help raise the necessary funds for the manufacture and marketing of the Bunch O Balloons product, Mr. Malone, through Tinnus, launched a Kickstarter.com internet campaign on July 22, 2014. (*Id.* at p. 4.) Malone's invention was an instant hit that went viral. (*Id.*) Funding via Kickstarter reached nearly $1 million, and his Kickstarter video featuring the Bunch O Balloons product has had approximately 2.9 million views. (*Id.*)

Within days, the Bunch O Balloons invention was featured in *Sports Illustrated*'s on-line magazine, on *Time* magazine's website, and on *People* magazine's website. (*Id.*) It was also highlighted on a nationally-televised broadcast of *Good Morning America*, and Mr. Malone even appeared on the *Today Show* with his unique invention during a nationally-televised broadcast. (*Id.*) Moreover, the Bunch O Balloons product went viral on the web, including one YouTube review of Mr. Malone's invention with approximately 9.6 million views. (*Id.*)

3

On July 22, 2014, the same day Mr. Malone launched his Kickstarter campaign, he received his first orders from the public for the Bunch O Balloons product. (*Id.*) In fact, the response was so overwhelming that he sold his entire inventory of the Bunch O Balloons production batch. (*Id.*) On August 21, 2014, Tinnus launched its website, http://bunchoballoons.com, to accept increasing numbers of product orders. (*Id.*) That website has continually received orders since that time. (*Id.*) On August 29, 2014, Tinnus shipped its first batch of the Bunch O Balloons product to customers located in the U.S. and around the world. (*Id.*) Shipments have continued since that time. (*Id.*)

As the publicity surrounding Mr. Malone's invention increased, so too did the interest in his product. (*Id.*) In August 2014, Mr. Malone began negotiating with ZURU, a small family-owned toy company founded in 2004 in a small garage in Cambridge, New Zealand. They agreed to partner with each other for the manufacture, marketing, and sale of the Bunch O Balloons product. (*Id.*) On August 19, 2014, Tinnus and ZURU entered into an exclusive license agreement wherein Tinnus, as the licensor, agreed to license to ZURU use on a worldwide basis any present or future trademark and patent rights owned by Tinnus relating to the Bunch O Balloons product. (*Id.*) Tinnus subsequently assigned to ZURU the copyright rights for the Bunch O Balloons product. (*Id.* at 5-6.) ZURU has invested heavily in the development, production, and marketing of the Bunch O Balloons product. (*Id.* at 6.)

III. Telebrands Deliberately Copies Bunch O Balloons and ZURU Acts to Protect its Intellectual Property

In or around July 2014, well-after Mr. Malone had filed patent and trademark applications through his company Tinnus, Telebrands learned about Bunch O Balloons via the internet. (Dkt. 67 at p. 6.) Telebrands concocted a scheme to copy Mr. Malone's Bunch O Balloons invention. (Dkt. 67 at pp. 6-9.). Documents produced in expedited discovery show that

4

Telebrands intentionally copied Bunch O Balloons in order to create Telebrands's virtually identical Balloon Bonanza product. (Dkt. 67 at pp. 6-9.) Telebrands did so long after Mr. Malone had invented, manufactured, marketed, accepted customer orders, and sold his product. Telebrands called its clone-product "Balloon Bonanza." (Dkt. 67 at p. 6.)[1]

ZURU learned about Telebrands's Balloon Bonanza product in December 2014 when Telebrands first began marketing its knock off. (Dkt. 67 at p. 9.) ZURU requested that Telebrands cease and desist its marketing and selling of Balloon Bonanza. (Dkt. 67 at p. 10.) Telebrands ignored that request. (Dkt. 67 at p. 10.) To enforce its intellectual property rights, ZURU brought this action against Telebrands for infringement of ZURU's copyright, trademark, and trade dress on January 27, 2015. (Dkt. 1.) ZURU then sent a letter to its own customers advising them of the lawsuit.[2]

IV. Telebrands Responds to ZURU's Lawsuit and a Consent Order Is Entered

On February 17, 2015, Telebrands filed (after business hours) a Motion to Show Cause for a Temporary Restraining Order and Preliminary Injunction. (Dkt. 13.) That motion contended that the aforementioned letter sent by ZURU threatened a lawsuit against Telebrands's customers "in bad faith." (*Id.*) ZURU did not have an opportunity to respond, as the Court issued an *ex parte* temporary restraining order ("TRO") against ZURU the very next day. (Dkt. 18.)[3]

---

[1] Telebrands states that this "product was marketed using the BALLOON BONANZA trademark."(Dkt. 177 at p. 2.) Telebrands's statement here is misleading as the USPTO has never registered the BALLOON BONANZA mark.

[2] Telebrands claims that this letter was "false and misleading" and was an "ad hominem attack." (Dkt. 177 at p. 3.) This is simply not true. That demand letter was not false or misleading, and, among other things, it also is constitutionally protected by the Noerr-Pennington doctrine.

[3] ZURU moved to have the Court reconsider that ruling on numerous grounds. (Dkt. 32.) The Court did not hold a hearing or rule on ZURU's motion for reconsideration.

On April 16, 2015, the Court held a conference prior to the hearing on the preliminary injunction motion that was scheduled for that day. The pending preliminary injunction motion was resolved at that conference, and the terms of the agreement were placed on the record.

Subsequently, on May 15, 2015, the Court entered a consent order outlining the terms of the resolved preliminary injunction motion. That consent order contains, among other things, provisions which trigger a review process for the parties' written communications to their customers under certain circumstances. (Dkt. 87 at ¶ 4.) If this review process is triggered, no written communication can be sent without the other party's consent or unless the Court orders otherwise. (Dkt. 87 at ¶ 4.)

The consent order incorporated the April 16, 2015 transcript by reference. (Dkt. 87 at ¶ 6.) Importantly, that transcript provides:

> MR. DUNLAP [Counsel for ZURU]: So, Judge, I think the first point was that either party may communicate with their customers directly any true fact about the status of their own or each other's or any intellectual property. And likewise either party may communicate with their customers or third parties about any true facts about the status of the case. And none of that is subject to the other party's review as long as it's a true statement.
> THE COURT: Counsel.
> MR. MALDONADO [Counsel for Telebrands]: Correct, your Honor.
> THE COURT: Okay.

(Dkt. 118 at 8:1-11).

V. A Texas Federal Court Enters a Preliminary Injunction against Telebrands

As mentioned, on June 9, 2015, the USPTO issued the '066 Patent which protects the Bunch O Balloons product. On that same day, Tinnus filed a patent infringement action in the Eastern District of Texas against Telebrands and Bed Bath & Beyond.[4] ZURU joined in that action. Immediately thereafter, Tinnus and ZURU moved for a preliminary injunction against

---

[4] Bed Bath & Beyond is one of Telebrands's customers that sold the Balloon Bonanza product.

Telebrands and Bed Bath & Beyond in the Texas case, seeking an order that prohibited them from marketing and selling the infringing Balloon Bonanza product.

Following the filing of the Texas patent action, Telebrands represented to its customers—customers that ZURU shares with Telebrands—that the Balloon Bonanza product did not infringe the '066 Patent. (Purser Decl. ¶ 3.) For example, on June 18, 2015, Telebrands's counsel stated that "[your] allegations of infringement and willful infringement [of the '066 Patent] are without merit. Accordingly, Walgreens will not accede to your demands." (Dkt. 110-1, Ex. 3.)

Contrary to Telebrands's claims of noninfringement, the Texas federal district court granted Tinnus's and ZURU's preliminary injunction motion on December 2, 2015. In so doing, the Texas court found that Telebrands's Balloon Bonanza product likely infringed the '066 Patent.

Subsequently, on December 22, the Texas court entered an order which outlined the terms of the preliminary injunction. That order prohibits Telebrands or anyone acting in concert with Telebrands from marketing or selling Balloon Bonanza or any colorable imitation of the same that infringes the '066 Patent.[5]

VI. <u>ZURU Writes a Letter Advising ███████ about the Preliminary Injunction</u>

On December 3—the day after the Texas court granted Tinnus's and ZURU's preliminary injunction motion—Aaron Purser, ZURU's in-house counsel, sent a letter to ███████ advising it of the Texas court's order. (Dkt. 177, Declaration of Ajit Khubani, Ex. 3.) In that letter, Mr. Purser also opined: "ZURU has been hearing claims that current knock off products are stating that they are introducing features such as colored-water and/or other

---

[5] In its pending preliminary injunction motion before the New Jersey court, Telebrands makes several lengthy patent arguments. Those arguments are more properly the subject of the Texas patent infringement action. Therefore, they should be raised in that action—not in the present New Jersey case which contains no claims of patent infringement.

color-related details to their knock off products in a means of avoiding infringing ZURU's

intellectual property. Please know that such claims are wholly without merit, as ZURU's

intellectual property, including, but not limited to its US Patent No. 9,051,066, have no

limitations involving color. A mere addition of a color-related feature to an infringing Bunch O

Balloons product can not, and does not, make such a product non-infringing." (*Id.*)

In that letter, Mr. Purser stated the facts in a neutral fashion. And none of the content of

his correspondence is false, misleading, or inflammatory. Indeed, Telebrands has never once

denied, and in fact admits, that a Texas court entered a preliminary injunction against it. (Dkt.

177 at p. 3-4.) Moreover, Mr. Purser truthfully stated that the '066 Patent does not have claim

limitations for color. Importantly, Mr. Purser never once included in his letter an accusation that

Telebrands's Battle Balloons product infringes ZURU's patent. He never used the term "Battle

Balloons," and he never mentioned Telebrands by name in the letter. This December 3 letter is

the only basis for Telebrands's present preliminary injunction motion.

VII. ZURU Seeks Relief to Prevent Telebrands from Abusing the New Jersey Consent
Order

Following the entry of a preliminary injunction against Telebrands in Texas, ZURU

reasonably believed that Telebrands would retaliate if ZURU truthfully tried to advise customers

about the injunction entered against Telebrands.[6] [7]

---

[6] ZURU came to this conclusion in light of four meritless contempt motions that Telebrands has
filed against ZURU since the May 15, 2015 consent order was entered in the present New Jersey
action. (Dkts. 88, 110, 139 & 156.) Throughout this litigation, Telebrands has aggressively tried
to wield this consent order as a commercial hammer to silence ZURU's truthful speech relating
to court proceedings and intellectual property. Telebrands has done so by burdening this Court
with repeated sanctions motions.

[7] In its present preliminary injunction motion, Telebrands writes as if the facts contained in its
contempt motions are true and as if the Court has actually granted their contempt motions. (Dkt.
177 at p. 6 ("Zuru's History of Violations of the Court's Consent Order")) ZURU vigorously

ZURU thus sought equitable, injunctive relief from this Court by moving for a preliminary injunction on December 10, 2015. (Dkt. 172.) That motion is pending. In that motion, ZURU requests that the Court vacate the aforementioned consent order because Telebrands has been improperly wielding it as a commercial hammer to try to silence truthful statements about court proceedings and ZURU's intellectual property and because the material circumstances that existed at the time the consent order was entered have changed. (*Id.*) ZURU also seeks an order requiring Telebrands to obtain leave of court first before filing any more contempt motions. (*Id.*)

VIII. <u>Telebrands Retaliates</u>

Telebrands did retaliate. Telebrands moved for another TRO and preliminary injunction on December 15, seeking to prohibit ZURU from discussing Telebrands at all with ZURU's customers. Specifically, Telebrands requests that this Court completely enjoin "Counterclaim Defendants [ZURU and Tinnus] . . . from communicating about Telebrands or its products to Telebrands' customers and prospective customers, without first following the review procedures mandated in Paragraph 4 of this Court's Consent Order of May 15, 2015 (Dkt. 87). . . ." (*See* Dkt. 176 at pp. 2-3) (emphasis added). The "review procedures mandated in Paragraph 4 of th[e] Court's Consent Order" allow Telebrands to object to any written communication and preclude the written communication from being sent (unless there is a court order stating otherwise). (Dkt. 87 at ¶ 4.) Thus, Telebrands asks this Court to give Telebrands censorship power to halt any communications (written or oral) by ZURU and Tinnus relating to Telebrands, including truthful communications, not only to customers but "potential customers," whatever that may mean. In

---

denies that it has violated the consent order or that Telebrands is entitled to any sanctions. (Dkts. 92, 111, 141 & 161.) All of Telebrands's motions are pending, and ZURU reasonably believes they will be denied, as ZURU did not violate the consent order.

other words, Telebrands seeks to suppress ZURU's and Tinnus's constitutional commercial free speech rights here.

Telebrands claims the basis for such drastic relief is the single December 3 cover letter by Mr. Purser. (Dkt. 177 at p. 7.) Telebrands alleges that this letter contains an accusation that Telebrands's Battle Balloons and Battle Balloons Color Combat products (collectively, "Battle Balloons") infringe ZURU's patent.[8] But this is not correct. Mr. Purser never even referenced the Battle Balloons or Telebrands name in his letter. In fact, Mr. Purser was not even aware of the Battle Balloons product until Telebrands filed its present motion. (Purser Decl.¶ 4.)

The next day on December 16, ZURU responded by preliminarily objecting to Telebrands's request for a TRO. (Dkt. 179.) Among other things, ZURU explained that Telebrands's request for a TRO was procedurally defective and constitutionally improper. (*Id.*)

On December 23, the New Jersey Court granted Telebrands's request for a show cause order and issued a TRO against ZURU. (Dkt. 194.)[9] ZURU now files this opposition to Telebrands's request for a preliminary injunction.

---

[8] Telebrands claims without evidentiary support that its Battle Balloons product is the "only one on the market that has the colored water feature." (Dkt. 177 at p. 7.) This is not correct. A cursory review of the internet shows that colored water in water balloons is nothing novel. *See* http://www.growingajeweledrose.com/2013/07/water-balloon-paint-war.html (last visited Dec. 27, 2015); http://rundrenched.com/introducing-the-most-colorful-water-balloon-fight-in-the-world/ (same); http://learn.walmart.com/Tips-Ideas/Articles/Summer_Gatherings/25392/ (same).

[9] ZURU notes its exceptions to this TRO for all of the reasons described below and for the reasons described in ZURU's previously-filed preliminary objections to Telebrands's request for a TRO (Dkt. 179), which are incorporated by reference herein. ZURU also notes that the TRO enjoins Tinnus. Yet, Tinnus has not yet responded to the newly-filed Complaint against it in this matter. The Court therefore lacks jurisdiction to issue a TRO against Tinnus. And even if there somehow were jurisdiction (there is not), there is no evidence in Telebrands's motion that Tinnus did anything wrong. Telebrands's motion is based on a single letter that ZURU—not Tinnus—sent to a customer.

## ARGUMENT

This Court should deny Telebrands's motion because Telebrands has without question failed to demonstrate that it is entitled to a preliminary injunction here. Granting this injunction would be reversible error.[10]

The Third Circuit has held that a preliminary injunction is an "extraordinary and drastic remedy, and one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *see also Madison Square Garden Corp v. Braddock*, 90 F.2d 924, 927 (3d Cir. 1997) ("upon an application for a preliminary injunction to doubt is to deny.").[11] Notably, "when First Amendment rights are at issue, [the Third Circuit will] conduct an independent examination of the factual record as a whole." *Miller v. Mitchell*, 598 F.3d 139, 145 (3d Cir. 2010).

"To obtain the 'extraordinary remedy' of a preliminary injunction, [Telebrands] must establish: '(1) a likelihood of success on the merits; (2) that [it] will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief.'" *Rawls v. Penn. Dept. of Corrections*, No. 09-1583, 2009 U.S. App. LEXIS 13458, at *3 (3d Cir. June 22, 2009).

A court should not issue a preliminary injunction unless a "movant [like Telebrands] produces evidence sufficient to convince the trial judge that all four factors favor preliminary relief." *Id.* "[A] failure to show a likelihood of success <u>or</u> a failure to demonstrate irreparable

---

[10] An order granting a preliminary injunction may be appealed as a matter of right. 28 U.S.C. § 1292(a)(1).

[11] The Court's TRO states that ZURU shall "show cause why . . . a preliminary injunction should not be entered. . . ." (Dkt. 194.) ZURU notes that under well-established Third Circuit case law, Telebrands, as the moving party, carries the burden of showing that it is entitled to a preliminary injunction. The burden is not on ZURU here.

injury must necessarily result in the denial of a preliminary injunction." *Morton v. Beyer*, 822 F.2d 364, 371 (3d Cir. 1987) (emphasis added).

I. <u>Telebrands Has Not Demonstrated That It Has Been Irreparably Harmed</u>

This Court should deny Telebrands's extreme request for a preliminary injunction because Telebrands cannot demonstrate that it has been irreparably harmed. A party moving for a preliminary injunction (like Telebrands) has a very high burden to satisfy in showing irreparable harm:  "Establishing a risk of irreparable harm is not enough. A plaintiff has the burden of proving a 'clear showing of immediate irreparable injury.'" *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987).

"The 'requisite feared injury or harm must be irreparable—not merely serious or substantial,' and it 'must be of a peculiar nature, so that compensation in money cannot atone for it.'" *ECRI*, 809 F.2d at 226 (quoting *Glasco v. Hills*, 558 F.2d 179, 181 (3d Cir. 1977)). Indeed, the "word irreparable connotes 'that which cannot be repaired, retrieved, put down again, atoned for. . . .'" *Acierno v. New Castle County*, 40 F.3d 645, 653 (3d Cir. 1994). "[A] failure to demonstrate irreparable injury must necessarily result in the denial of a preliminary injunction." *In re Arthur Treacher's Franchisee Litigation*, 689 F.2d 1137, 1143 (3d Cir. 1982).

Importantly, the Third Circuit has held that "the risk of irreparable harm must not be speculative." *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 488 (3d Cir. 2000). And it almost goes without saying that "there must be a causal relationship between the alleged irreparable harm and the purportedly wrongful conduct." *DeAngelo Bros., Inc. v. Clarius*, No. 3:CV-06-0466, 2006 U.S. Dist. LEXIS 57846, at *35 (M.D. Pa. Aug. 17, 2006) (citing *Clarke Transp. Servs. v. Haskins*, No. 06-785, 2006 U.S. Dist. LEXIS 38137, at *2 (E.D. Pa. June 8, 2006)).

Not surprisingly, Telebrands has failed to proffer any credible evidence that it has suffered <u>any</u> harm—much less harm that is "irreparable." Importantly, there is no report by any economic expert demonstrating that Telebrands has suffered irreparable harm here. Nor is there any testimony in the form of a declaration or otherwise from any customer who has unequivocally stated that that customer decided not to purchase Battle Balloons because of Mr. Purser's innocuous (and truthful) statement regarding the fact that the '066 Patent contains no limitations involving color.

Instead, Telebrands offers the self-serving declaration of its own CEO as "evidence" of the irreparable harm that Telebrands has supposedly sustained. Specifically, Telebrands's CEO claims that ███████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████ ████████████████ (Dkt. 177, Decl. of Ajit Khubani, at ¶ 15.) But such statements here are nothing more than speculation, which is nowhere near enough to demonstrate that Telebrands has suffered irreparable harm here.  This declaration is speculative because it fails to demonstrate that ZURU's actions caused Telebrands's alleged harm. *See DeAngelo Bros., Inc.*, 2006 U.S. Dist. LEXIS 57846, at *35 ("there must be a causal relationship between the alleged irreparable harm and the purportedly wrongful conduct"). As this Court is aware, Telebrands deliberately and purposely copied ZURU's successful Bunch O Balloons product. In doing so, Telebrands wholly ignored ZURU's intellectual property rights. In order to entice its corporate customers to purchase the infringing Balloon Bonanza product, Telebrands repeatedly told them that Balloon Bonanza did not infringe ZURU's intellectual property. But that was not the truth. Telebrands lost its credibility when a Texas federal court entered an injunction against Telebrands that

prohibited Telebrands from selling Balloon Bonanza. Telebrands is now trying to sell to these very same customers a "new" product called Battle Balloons—a product which is nothing more than the infringing Balloon Bonanza product in disguise. If Telebrands's customers are now gun shy with respect to purchasing Telebrands's Battle Balloons product, that is understandable, considering that Telebrands previously misrepresented the facts to these customers. Put another way, if Telebrands's customers are truly not purchasing Battle Balloons, that is because they most likely do not wish to be duped again by Telebrands. Clearly, Telebrands's customers are aware of the old saying: "Fool me once, shame on you. Fool me twice, shame on me."

Here, Telebrands is the one actually responsible for causing its own alleged harm—not ZURU. Telebrands's CEO claims that Mr. Purser's statement supposedly caused Telebrands's customers to refrain from purchasing Battle Balloons.[12] But Telebrands's customers almost certainly decided not to purchase Battle Balloons for reasons wholly unrelated to Mr. Purser's statement. As described above, these customers likely have not purchased Battle Balloons because Telebrands previously misrepresented the facts to its customers, claiming that Balloon Bonanza did not infringe ZURU's intellectual property rights—when in fact that was not the truth. Why should these same customers now believe that Battle Balloons is any different?

Until and unless Telebrands can demonstrate with certainty that ZURU actually caused Telebrands irreparable harm—which Telebrands has wholly failed to prove here—an injunction

---

[12] Even if what Mr. Khubani says is true (ZURU disputes the veracity and credibility of Mr. Khubani's testimony), Telebrands's customers are ███████████████████████████ ████████████████████████████████████████████████████████████ wholly unrelated to Mr. Purser's letter, such as the simple fact that customers did not like Telebrands's Balloon Bonanza product and that that product appears to have been a financial bust, as Telebrands provides no evidence of financial success for the original knock off. Telebrands even claimed that it stopped manufacturing and selling Balloon Bonanza before an injunction was entered against it. The testimony of Mr. Khubani, even if true, does not rise to the level of "irreparable" here.

is not proper. In other words, this Court should not issue a preliminary injunction based on an alleged harm that is entirely speculative in nature. *See Adams*, 204 F.3d at 488 ("the risk of irreparable harm must not be speculative").

Telebrands also claims a preliminary injunction is necessary because ZURU has supposedly caused Telebrands economic harm in the form of lost sales and business. (Dkt. 177 at p. 17.) This argument likewise fails. That is because economic loss such as lost sales does not rise to the level of irreparable harm necessary to support a preliminary injunction. *See Quickie Mfg. Corp. v. Libman Co.*, 180 F. Supp. 2d 636, 651 (D.N.J. 2002) (potential lost sales alone insufficient to demonstrate "manifest irreparable harm"); *Acierno v. New Castle County*, 40 F.3d at 653 ("Economic loss does not constitute irreparable harm.").

Moreover, if Telebrands has actually suffered lost sales because of ZURU's letter (it clearly did not), Telebrands is not without recourse here. It could try to seek monetary damages from ZURU at trial to compensate Telebrands for any economic loss, assuming of course Telebrands could first prove (which it cannot) that ZURU is liable. The availability of such relief at trial plainly forecloses any necessity for a preliminary injunction here. *See Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989) ("the availability of adequate monetary damages belies a claim of irreparable injury"); *In re Arthur Treacher's Franchisee Litigation*, 689 F.2d at 1145 ("We have never upheld an injunction where the claimed injury constituted a loss of money, a loss capable of recoupment in a proper action at law.").

Telebrands also tries to argue that it is entitled to a preliminary injunction because it "will suffer a general loss of credibility if Zuru is allowed to keep making false statements." (Dkt. 177 at p. 18.) Like Telebrands's other claims, this argument too is entirely without merit and speculative at best. Notably, Telebrands has not proffered a single shred of evidence

demonstrating that it has <u>actually suffered</u> any injury to its reputation as a result of Mr. Purser's statement.

Moreover, Telebrands's claim here presupposes that Telebrands had credibility and a good reputation to start with. There is no evidence in the record of such a fact, and a cursory review of the internet suggests that Telebrands's reputation is questionable at best.[13] In short, as Telebrands has failed to demonstrate that it has suffered any irreparable harm, this Court should not issue a preliminary injunction.

## II. Telebrands Will Not Succeed on the Merits of Its Claims

Even if Telebrands somehow has been irreparably harmed (it clearly has not), Telebrands's extraordinary request for an injunction should still be denied. Telebrands bases its request for a preliminary injunction on counts six (tortious interference with contractual relationships) and seven (tortious interference with a prospective economic advantage) of its second amended counterclaim. (Dkt. 177 at 9.) Because Telebrands has not and cannot demonstrate that it will prevail on these meritless tortious interference claims, Telebrands is not entitled to a preliminary injunction here.

---

[13] Telebrands has been accused of violating consumer protection laws, the latest being a suit by the New Jersey Attorney General and state Division of Consumer Affairs initiated in August 2014. Moreover, the nationally-recognized Better Business Bureau's ("BBB") Board of Directors has revoked Telebrands's status as an "Accredited Business." The BBB Board apparently did so because the BBB had received 1,397 complaints relating to Telebrands within the three years prior to the revocation. *See* http://www.bbb.org/new-jersey/business-reviews/general-merchandise-retail/telebrands-in-fairfield-nj-19000531/.

A. <u>Telebrands's Purported Tortious Claims Fail under the Doctrine of Preemption</u>

Telebrands's preliminary injunction motion, based on purported state law tortious interference claims, fails under the doctrine of preemption.[14] Specifically, because the purported state law tortious interference claims are preempted by federal law, Telebrands cannot possibly succeed on the merits of such claims—and the motion for a preliminary injunction should be denied.

It is well-established that "[s]tate tort claims against a patent holder, including tortious interference claims, based on enforcing a patent in the marketplace, are 'preempted' by federal patent laws, unless the claimant can show that the patent holder acted in 'bad faith' in the publication or enforcement of its patent." *800 Adept, Inc. v. Murex Sec., Ltd.*, 539 F.3d 1354, 1369 (Fed. Cir. 2008).

"[A] party attempting to prove bad faith on the part of a patentee enforcing its patent rights has a heavy burden to carry." *Id.* at 1370. To establish bad faith and avoid preemption, the party relying on the bad-faith exception (here, Telebrands) must show both objective <u>and</u> subjective bad faith. *See id.* "The objective component requires a showing that the infringement allegations are 'objectively baseless.'" *Id.* "The subjective component relates to a showing that the patentee in enforcing the patent demonstrated subjective bad faith." *Id.* "Absent a showing that the infringement allegations are objectively baseless, it is unnecessary to reach the question of the patentee's intent." *Id.*

Here, Telebrands's state law tortious interference claims are preempted by federal law. Importantly, Telebrands concedes, as it must, that its preliminary injunction motion summarily fails if it cannot show bad faith on ZURU's part. (Dkt. 177 at p. 9.) Telebrands's only purported

---

[14] Telebrands appears to acknowledge this fact by devoting about seven pages of its brief in anticipation of the issue.

basis for bad faith is the letter sent by Aaron Purser on December 3, 2015. (*Id.* at p. 7.)
Telebrands, however, grossly contorts what that letter actually says. Even a cursory review of
Mr. Purser's letter easily demonstrates there is no bad faith here.

There is no <u>objective</u> bad faith here because Mr. Purser never once stated in his letter that
Telebrands's Battle Balloons product infringes ZURU's patent. His cover letter never mentions
Telebrands's name. Nor does Mr. Purser even mention the Battle Balloons product in his
correspondence. Indeed, Telebrands admits this fact, stating this "letter did not name the
BATTLE BALLOONS COLOR COMBAT as the product." (Dkt. 177 at p. 7.)[15]

Rather, Mr. Purser merely noted that "ZURU has been hearing claims that current knock
off products are stating that they are introducing features such as colored-water and/or other
color-related details to their knock off products in a means of avoiding infringing ZURU's
intellectual property. Please know that such claims are wholly without merit, as ZURU's
intellectual property, including, but not limited to its US Patent No. 9,051,066, have no
limitations involving color. A mere addition of a color-related feature to an infringing Bunch O
Balloons product can not, and does not, make such a product non-infringing."

This statement is nothing more than a truthful observation about ZURU's patent.
Noticeably, Telebrands does not dispute, and therefore concedes, that Mr. Purser's observation is
truthful here. Because this letter is truthful, does not use the Telebrands name or the Battle
Balloons product name, and does not state that the Battle Balloons product infringes ZURU's

---

[15] Notably, the main focus of the letter is to advise that the knock off Balloon Bonanza product
has been enjoined. Telebrands does not, nor could it, contend that stating such a fact creates a
bad faith exception to preemption.

intellectual property, there is no objective bad faith on ZURU's part.[16] *See 800 Adept, Inc.*, 539 F.3d at 1369 ("The objective component requires a showing that the infringement allegations are 'objectively baseless.'").

As there is no objective bad faith, this Court need not address the issue of subjective bad faith. Even if there was objective bad faith (there clearly was not), ZURU <u>subjectively</u> sent the letter in good faith. (Purser Decl. ¶¶ 4-6.) Notably, as Mr. Purser was not even aware of the Battle Balloons products, Mr. Purser could not and did not allege that those products infringed ZURU's patent in "bad faith." (*Id.*) To the contrary, ZURU sent the letter to advise about the preliminary injunction entered against Telebrands in Texas. ZURU of course had a legal right to do so in order to enforce the injunction—a fact that Telebrands cannot dispute. Moreover, as mentioned, the letter merely contains unremarkable (and true) observations about ZURU's patent. Indeed, Telebrands does not dispute that Mr. Purser said anything untrue about ZURU's intellectual property. For these reasons, there is no subjective bad faith here.

Telebrands tries to manufacture a claim of subjective bad faith by arguing that Mr. Purser's letter somehow violates this Court's prior May 15, 2015 consent order.[17] (Dkt. 177 at p. 14.) But this is simply not true, as such an argument ignores the facts. ZURU did not violate the consent order. In this connection, the parties explicitly agreed on the record that truthful statements are not subject to review under any circumstances—an agreement that was later incorporated into the consent order. (Dkt. 87 at ¶ 6; *see also* Dkt. 118 at 8:1-11) (allowing

---

[16] Even if the December 3 letter could somehow be construed to allege infringement of a patent (it could not), the Texas court issuing the preliminary injunction found that ZURU's patent is likely valid and infringed. There can be no bad faith here on ZURU's part in relying on that preliminary injunction order.

[17] Even if somehow there was a violation of the consent order (there clearly was not), that would be irrelevant to the preemption bad faith analysis. Telebrands appears to confuse "bad faith" generally with the analysis of whether a claim of infringement is asserted in bad faith.

truthful statements about intellectual property and case proceedings without review). As discussed, everything in Mr. Purser's letter is factually true and correct. Moreover, ZURU never even referenced Telebrands by name in the letter, and so the review procedures of the consent order are not triggered. (Dkt. 87.) In light of these basic principles, ZURU did not violate the consent order here.

Because there is no bad faith, the bad faith exception does not apply. As the bad faith exception does not apply, Telebrands's state law tortious interference claims based on the letter are preempted—and fail. For this reason as well, this Court should deny Telebrands's preliminary injunction motion.

### B. Telebrands Seeks Relief that Violates the U.S. and New Jersey Constitutions

#### i. The First Amendment and New Jersey Constitution Preclude the Relief that Telebrands Seeks

Even if Telebrands's state law claims are not preempted by federal law (they are), the relief that Telebrands seeks here is unconstitutionally overbroad and violates ZURU's free speech rights. "The First Amendment protects [a party's] right to publish truthful information[.]" *Tenn. Secondary Sch. Ath. Ass'n v. Brentwood Acad.*, 551 U.S. 291, 295 (2007). Indeed, injunctions that seek overbroad relief must be denied. *See, e.g., Sesolinc GRP, Inc. v. Metal-Con, Inc.*, No. 6:11-cv-96, 2012 U.S. Dist. LEXIS 80868, at *5 (S.D. Ga. June 11, 2012) ("The consent injunction in this case would prohibit a substantial amount of speech that is constitutionally protected. Accordingly, the Court finds that the consent injunction is unconstitutionally overbroad."). In this regard, "content-based restrictions on speech, such as some of the restrictions in this . . . injunction, must meet strict scrutiny." *Id.* at *4 (*citing Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983)).

Notably, "[a]n injunction is impermissibly overbroad if it seeks to restrain the defendant from engaging in legal conduct or from engaging in illegal conduct that is not fairly the subject of the litigation." *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 145 (2d Cir. 2011); *see also* 13-65 Moore's Federal Practice - Civil § 65.60 (2015).

Perhaps even more importantly, ZURU has an even broader right to free speech under the New Jersey Constitution than it does under the U.S Constitution. N.J. Const., Art. I, ¶ 6. "That guarantee [of New Jersey free speech clause] is one of the broadest in the nation, and it affords greater protection than the First Amendment." *Dublirer v. 2000 Linwood Ave. Owners, Inc.*, 220 N.J. 71, 78-79 (N.J. 2014) (citations omitted). "Federal law requires 'state action' to invoke the First Amendment. The State Constitution does not." *Id.* Moreover, to the extent that "[a] restriction in question is unreasonable and violates the State's Constitution, the covenant that memorializes it is unenforceable." *Mazdabrook Commons Homeowners' Ass'n v. Khan*, 210 N.J. 482, 507 (2012).

Here, the "injunction in this case would prohibit a substantial amount of speech that is constitutionally protected." *Sesolinc*, No. 6:11-cv-96, at *5. The consent order (Dkt. 87) previously entered into only limits <u>written</u> communications under certain circumstances, and has a complete exception for truthful communications. But now, Telebrands seems to want to drastically expand that order by prohibiting both written and oral communications about Telebrands, with no exception for truthful communications. Indeed, if the Court were to grant Telebrands's motion, the injunction could be interpreted to "forbid [both ZURU and Tinnus] from talking about [Telebrands] at all." *Id.* Specifically, Telebrands requests that this Court completely enjoin "Counterclaim Defendants [ZURU and Tinnus] . . . from communicating about Telebrands or its products to Telebrands' customers and prospective customers, without

21

first following the review procedures mandated in Paragraph 4 of this Court's Consent Order of

May 15, 2015 (Dkt. 87). . . ." (*See* Dkt. 176 at pp. 2-3) (emphasis added). In that regard, the

"review procedures mandated in Paragraph 4 of this Court's Consent Order" provide that "[n]o

such written communication shall be sent unless the other party consents or the Court orders

otherwise." (Dkt. 87 at ¶ 4.) Thus, Telebrands appears to ask this Court to give Telebrands *carte

blanche* to halt any communications (written or oral) by ZURU and Tinnus relating to

Telebrands, including truthful communications. This assumedly would include the truthful fact

that a preliminary injunction has been entered against Telebrands, which prohibits Telebrands

from selling its knock-off Balloon Bonanza product or colorable imitations of the same.

It is clear that Telebrands's overbroad request—which essentially asks the Court to enjoin

ZURU from "communicating about Telebrands" in any way—if granted would abrogate and

violate ZURU's constitutional rights both under the U.S. and New Jersey Constitutions.[18] It is

also self-evident that Telebrands's request for relief does not survive strict scrutiny, as this Court

(or Telebrands) does not have a compelling interest in prohibiting truthful communications and

because the relief sought is not narrowly drawn.[19]

Moreover, ZURU and Telebrands share customers. An injunction here would not only

limit ZURU's truthful speech to its own customers, it would amount to a gag order, thereby

providing Telebrands with an incredibly unfair advantage over ZURU in the marketplace,

---

[18] Because state action is not required to invoke ZURU's constitutional rights under the New
Jersey Constitution, Telebrands's actions alone violate ZURU's constitutional rights. Moreover,
Telebrands is asking the Court to issue an order that would likewise violate ZURU's
constitutional rights, which of course would amount to state action.

[19] The consent order itself (Dkt. 87) has been wielded in an unconstitutional manner by
Telebrands. For the reasons stated in ZURU's Order to Show Cause for an Injunction (Dkt. 172
& Dkt. 172-1), the consent order itself is unconstitutional. ZURU incorporates herein the
arguments in this regard contained in its Order to Show Cause for an Injunction.

particularly when Telebrands has a history of spreading falsehoods about ZURU's intellectual property—falsehoods that ZURU must understandably correct. Because the drastic relief that Telebrands now seeks is unquestionably repugnant to the constitutional right to free speech, Telebrands's motion should be denied for this reason as well.

ii. <u>ZURU Has Never Waived Any of Its Constitutional Rights</u>

Telebrands may try to argue that ZURU waived its First Amendment and New Jersey free speech rights when ZURU entered into the consent order (Dkt. 87), but such an argument lacks merit. Indeed, it is hornbook law that under the U.S. Constitution, "courts indulge every reasonable presumption against waiver of fundamental constitutional rights and that [courts] do not presume acquiescence in the loss of fundamental rights." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938).

Moreover, the New Jersey Supreme Court has set an incredibly high standard for waiver of New Jersey Constitutional rights. *See, e.g., Mazdabrook Commons Homeowners' Ass'n v. Khan*, 210 N.J. 482, 505-506 (2012) (stating there was no waiver, and explaining that "a waiver of constitutional rights in any context must, at the very *least*, be clear") (emphasis in original). Moreover, to the extent a restriction to free speech is unreasonable and violates the State's Constitution, the covenant that memorializes it is unenforceable. *Id.* at 507.

Here, Telebrands may try to argue that the consent order (Dkt. 87) in this case constitutes a waiver of ZURU's constitutional rights. This claim fails. As an initial matter, Telebrands now seeks to impose new restrictions on ZURU that are even broader than those contained in the consent order. (Dkt. 87.) Indeed, Telebrands appears to ask this Court to bar ZURU from communicating about Telebrands in all circumstances, including circumstances involving

truthful communications to ZURU's own customers. ZURU has never once waived its right to

challenge such an unreasonable demand like that which Telebrands now appears to make here.

Moreover, ZURU did not waive any constitutional rights by entering into the May 15,

2015 consent order (Dkt. 87). Nowhere in that order does it say that ZURU agreed to waive its

constitutional rights. To the contrary, ZURU explicitly reserved its constitutional free speech

rights—namely, the right to make truthful statements about its intellectual property rights and

this litigation. In that regard, the consent order incorporated by reference the transcript of the

hearing. (Dkt. 87 at ¶ 6.) The terms, which are contained in that transcript and which opposing

counsel agreed to, clearly provide that truthful statements are not subject to review under any

circumstances. (Dkt. 118 at 8:1-11). But now, Telebrands seeks to unconstitutionally snuff out

ZURU's right to engage in truthful speech. For these reasons, ZURU explicitly reserved its

fundamental constitutional right to engage in truthful commercial speech, and there is no waiver

here. This is especially so in light of the very heavy presumption against waiver. *See Johnson v.*

*Zerbst*, 304 U.S. 458, 464 (1938).

    C. <u>Telebrands's Tortious Interference Claims are Barred by the Noerr-Pennington
Doctrine</u>

Telebrands is also not entitled to a preliminary injunction because ZURU is shielded

from liability under the Noerr-Pennington doctrine with regard to Telebrands's tortious

interference claims. "The Noerr-Pennington doctrine derives from the *First Amendment's*

guarantee of 'the right of the people . . . to petition the Government for a redress of grievances."

*Giles v. Phelan, Hallinan & Schmieg, L.L.P.*, No. 11-6239 (JBS/KMW), 2013 U.S. Dist. LEXIS

78161, at *17 (D.N.J. June 4, 2013). "Under the Noerr-Pennington doctrine, those who petition

any department of the government for redress are generally immune from . . . liability for their

petitioning conduct." *Id.*; *see also Macario v. Pratt & Whitney Canada, Inc.*, No. 90-3906, 1993

U.S. Dist. LEXIS 1856, *13 (E.D. Pa. Feb. 11, 1993). "The right of access to the courts is indeed but one aspect of the right of petition.'" *Giles*, 2013 U.S. Dist. LEXIS 78161, at *17 (quoting *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972)).

"Petitioning is immune from liability even if there is an improper purpose or motive." *A.D. Bedell Wholesale Co. v. Triangle Candy & Tobacco Co.*, 263 F.3d 239, 250 (3d Cir. 2001); *see also E.R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 138 (1961) (holding that even if the petitioner's sole purpose was to destroy its competition, petitioner would be immune). "Even false statements presented to support such petitions are protected." *Davric Maine Corp. v. Rancourt*, 216 F.3d 143, 147 (1st Cir. 2000); *see also Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d 700, 710 (Fed. Cir. 1992).

"Although the Noerr-Pennington doctrine originally applied to antitrust cases, courts have expanded its application to other contexts." *Giles*, 2013 U.S. Dist. LEXIS 78161, at *17-*18. In this regard, the Third Circuit has stated: "This court, along with other courts, has by analogy extended the Noerr-Pennington doctrine to offer protection to citizens' petitioning activities in contexts outside the antitrust area as well." *We, Inc. v. City of Philadelphia*, 174 F.3d 322, 326-27 (3d Cir. 1999).

Importantly, the Third Circuit has observed that "Noerr-Pennington immunity . . . include[s] efforts to influence governmental action incidental to litigation such as prelitigation threat letters." *A.D. Bedell Wholesale Co.*, 263 F.3d at 252; *see also Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 935-37 (9th Cir. 2006); *Coastal States Mktg., Inc. v. Hunt*, 694 F.2d 1358, 1366-67 (5th Cir. 1983); *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1080 n.4 (8th Cir. 1999); *McGuire Oil Co. v. Mapco, Inc.*, 958 F.2d 1552, 1559-62 (11th Cir. 1992); *Glass Equip. Dev., Inc. v. Besten, Inc.*, 174 F.3d 1337, 1343-44 (Fed. Cir. 1999).

Courts across the country likewise provide parties who issue intellectual property demand letters with immunity under the Noerr-Pennington doctrine. *See Matsushita Elecs. Corp. v. Loral Corp.*, 974 F. Supp. 345, 359 (S.D.N.Y. 1997) (holding that defendant was immune from liability for tortuous interference with business relations under the Noerr-Pennington doctrine where defendant sent letters to plaintiff's potential customers regarding alleged patent infringement); *Select Comfort Corp. v. Sleep Better Store, LLC*, 838 F. Supp. 2d 889, 900 (D. Minn. 2012) ("the Court finds that the *Noerr-Pennington* doctrine immunizes [defendant's letter] from [plaintiff's] tortious interference with contract counterclaim"); *Barq's Inc. v. Barq's Beverages, Inc.*, 677 F. Supp. 449, 453 (E.D. La. 1987).

Here, the Noerr-Pennington doctrine provides ZURU with immunity against Telebrands's meritless tortious interference claims (counts six and seven). In its counterclaim, Telebrands primarily complains about the fact that ZURU filed this lawsuit and that ZURU sent letters to its customers.

- In Count Six (tortious interference with contractual relationships), Telebrands alleges that ZURU supposedly "intentionally interfered with [Telebrands's] contractual relationships [with its customers] by sending Telebrands's customers and advertisers improper letters . . . and improperly using litigation as a commercial device for selling their own competing product." (Dkt. 174 at ¶ 83.)

- In Count Seven (tortious interference with a prospective economic advantage), Telebrands alleges that ZURU supposedly "tortuously interfered with Telebrands's prospective contractual relationships with [certain] customers" when ZURU sent its alleged letters to such alleged customers. (Dkt. 174 at ¶ 90.)

These acts—the sending of letters and the filing of this action which give rise to Telebrands's tortious interference claims—all relate to ZURU's First Amendment right to petition the Court for redress of ZURU's injuries. Because the Noerr-Pennington doctrine provides ZURU with immunity for such actions, including Mr. Purser's act of sending a letter advising of the injunction, counts six and seven of Telebrands's amended counterclaim fail. *See, e.g., Sosa*, 437

F.3d at 935-37 (holding that letters between private parties threatening litigation are afforded

Noerr-Pennington protection outside of the antitrust context).

Telebrands accuses ZURU of supposedly engaging in bad faith conduct, including

making false statements and "attempt[ing] to intimidate Telebrands' customers into not

purchasing Telebrands' new products." (Dkt. 177 at 1, 2, 7, 9, 10.) Such an unfounded

accusation lacks merit. Even if ZURU had engaged in some sort of behavior that the Court

deems improper (ZURU has not), the Noerr-Pennington doctrine would protect ZURU against

Telebrands's claims here under well-established U.S. Supreme Court and Third Circuit case law.

*See A.D. Bedell Wholesale Co.*, 263 F.3d at 250 ("Petitioning is immune from liability even if

there is an improper purpose or motive."); *Noerr Motor Freight, Inc.*, 365 U.S. at 138 (holding

that even if the petitioner's sole purpose was to destroy its competition, petitioner would be

immune); *Davric Maine Corp. v. Rancourt*, 216 F.3d 143, 147 (1st Cir. 2000) ("Even false

statements presented to support such petitions are protected."). For these reasons, Telebrands's

tortious interference claims fail, and Telebrands is not entitled to a preliminary injunction based

on such meritless claims.

    D. <u>Telebrands Cannot and Will Not Prevail on Its Tortious Interference Claims</u>

Telebrands is also not entitled to a preliminary injunction because Telebrands cannot

prove that ZURU tortiously interfered with any business contract or expectancy. "To establish a

tortious interference claim with an existing contract, [Telebrands] must prove: (1) an existing

contractual relationship; (2) intentional and malicious interference with that relationship; (3) loss

or breach of contract as result of the interference; and (4) damages resulting from that

interference." *Digiorgio Corp. v. Mendez & Co.*, 230 F. Supp. 2d 552, 558 (D.N.J. 2002).

Similarly, to establish a claim for tortious interference with prospective economic advantage under New Jersey law, "a claimant [like Telebrands] must allege (1) an existing or reasonable expectation of economic benefit or advantage; (2) the defendant's knowledge of that expectancy; (3) the defendant's wrongful, intentional interference with that expectancy; (4) the reasonable probability that the claimant would have received the anticipated economic benefit in the absence of the defendant's interference; and (5) damages resulting from the defendant's interference." *Pactiv Corp. v. Perk-Up, Inc.*, No. 08-05072 (DMC), 2009 U.S. Dist. LEXIS 72796, *31 (D.N.J. Aug. 18, 2009) (citations omitted).

Here, Telebrands cannot prove that ZURU wrongfully, intentionally, or maliciously interfered with any relationship or advantage—which is a key element that Telebrands must satisfy before it can recover on a tortious interference claim. Mr. Purser, on behalf of ZURU, sent his letter in good faith—not as a means of wrongfully interfering with Telebrands's legitimate business. (Purser Decl. ¶¶ 4-6.) Mr. Purser did so in order to enforce the preliminary injunction that the Texas federal district court had entered in ZURU's favor. (*Id.*) And notably, Mr. Purser never once made an accusation in the letter that Telebrands's Battle Balloons product infringes ZURU's patent. Indeed, he never mentioned Telebrands by name in the letter. Nor did he ever use the term "Battle Balloons" in his letter. Instead, he simply noted that the '066 Patent does not contain claim limitations for color and that adding color to a product would not sidestep the patent's limitations.

In a similar vein, Telebrands cannot prove that it lost any contract or expectancy as a result of Mr. Purser's letter—which is yet another critical element that Telebrands must prove in order to recover on a tortious interference claim. As described above, to the extent that Telebrands has lost any business related to the Battle Balloons product, any such loss was not

28

caused by ZURU. Rather, it is most probably due to the fact that Telebrands was less than truthful with its customers about whether it balloon products infringe ZURU's intellectual property. Because Telebrands's tortious interference claims fail for these reasons, this Court should deny Telebrands's request for a preliminary injunction.[20]

III. <u>The Balance of Harms Greatly Favors ZURU</u>

The third prong—balance of harms—greatly favors ZURU, and thus, an injunction is not proper here. At its heart, Telebrands's motion attempts to impose a complete gag order on ZURU, thereby suppressing ZURU constitutional rights here. In this connection, Telebrands seeks broad relief—namely, to have *carte blanche* to stop ZURU from communicating with anyone about Telebrands in all circumstances—even if such communications are truthful. Such relief would violate ZURU's constitutional rights to truthful commercial speech. Thus, the harm to ZURU would be enormous and incredibly egregious here. This is especially so—not only because Telebrands has illegally usurped ZURU's intellectual property—but also because Telebrands appears to be making <u>un</u>truthful statements to ZURU's customers (e.g., that Balloon Bonanza does not infringe ZURU's intellectual property rights). (Dkt. 172-1 at p. 8.) Critically, ZURU must be able to correct the record and make truthful statements to its own customers. But if the Court grants Telebrands's motion, ZURU will not be able to do that. In short, Telebrands

---

[20] Telebrands's tortious interference claims fail for another reason, which in turn dooms its request for a preliminary injunction here. Specifically, Telebrands has not alleged in its second amended counterclaim a single contract or business expectancy that has been interfered with. Notably, courts have repeatedly dismissed tortious interference claims where no specific contract or business expectancy has been identified in the pleading. *See Am. Millennium Ins. Co. v. First Keystone Risk Retention Grp., Inc.*, No. 08-2821, 2009 U.S. App. LEXIS 11981, at *7 (3d Cir. 2009); *Decosta v. English*, No. 11-2651 (MAH), 2012 U.S. Dist. LEXIS 20515, *24, 2012 WL 528760 (D.N.J. Feb. 16, 2012). ZURU intends to move to dismiss Telebrands's tortious interference claims (counts six and seven) on these grounds. ZURU has until January 11, 2016 to file its motion.

has wholly failed to show "that granting preliminary [injunctive] relief will not result in even greater harm to the nonmoving party [here, ZURU]." *Rawls*, 2009 U.S. App. LEXIS 13458 at *3.

In contrast, the harm to Telebrands, if any, is minimal and certainly not irreparable. ZURU has a lawful right to advise its customers about the preliminary injunction entered against Telebrands. Similarly, ZURU has the right to advise customers about the contours of ZURU's patent. But Telebrands now tries to undermine that right by claiming without support that ZURU is somehow harming Telebrands's reputation and sales. Even if that were the case (it is not), any such harm is of Telebrands's own doing and is not a basis to play tit-for-tat by counter-moving for a preliminary injunction against ZURU.

## IV. The Public Interest Strongly Disfavors an Injunction

The fourth prong—public interest—strongly disfavors an injunction here. That is because the public has a compelling interest in ensuring that a party's constitutional rights are protected (here, ZURU). Moreover, the public interest greatly favors enforcing patents that are valid and infringed, which is all that ZURU has done. Further, the public also has an interest in ensuring that a party (like Telebrands) does not abuse the litigation system by counter-moving for an injunction based on its own misrepresentations and unlawful activities. The injunction should be denied.

## **CONCLUSION**

For all of these reasons, this Court should deny Telebrands's extraordinary request for a preliminary injunction.  ZURU is also entitled to such other relief as the Court deems proper.

Dated: January 5, 2016                  Respectfully submitted,
                                        ___s/   Jennifer Mara_____
                                        Baldassare & Mara, LLC
                                        570 Broad Street, Suite 900
                                        Newark, New Jersey 07102

                                        Susan C. Cassell
                                        Law Office of Susan C. Cassell
                                        419 Lucille Court
                                        Ridgewood, New Jersey 07450

                                        Thomas M. Dunlap (admitted *pro hac vice*)
                                        David Ludwig (admitted *pro hac vice*)
                                        Eric L. Olavson (admitted *pro hac vice*)
                                        Dunlap Bennett & Ludwig PLLC
                                        1717 Pennsylvania Avenue, NW, Suite 1025
                                        Washington, District of Columbia 20006

                                        Cortland Putbrese (admitted *pro hac vice*)
                                        Dunlap Bennett & Ludwig PLLC
                                        2307 East Broad Street, Suite 301
                                        Richmond, Virginia 23223

                                        *Counsel for the Plaintiff ZURU Ltd.*